PEOPLE v. NUGENT.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1901.)

1. COURTS—CONVENING—ORDER.

Where the form of the order convening the county court was in substantial compliance with Code Civ. Proc. § 355, and Code Cr. Proc. § 45, except that it was made by the county court instead of the county judge, as required by such provisions, such error did not invalidate the court convened thereunder; and hence it was not error to refuse to set aside an indictment for assault filed at such term, on such objection.

2. SAME—FAILURE TO PUBLISH—PROCEEDINGS INVALID.

Where the order convening the county court was not published once each week for three successive weeks before the term was held, in a

newspaper of the county, as required by Code Civ. Proc. § 356, or for four successive weeks, as required by Code Cr. Proc. § 45, the court was not properly convened; and an indictment of defendant for assault, filed at such term, should have been dismissed, since it and all proceedings thereon were invalid.

Appeal from Erie county court.

David J. Nugent was convicted of assault, and he appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

W. B. Hoyt, for appellant.

Thomas Penney and Frederick Holler, for the People.

WILLIAMS, J. The indictment was found and filed in county court July 27, 1899. The defendant was arraigned July 28, 1899, and objected to such arraignment and moved to set aside the indictment upon the ground that the court had not been properly convened,—was not a court at all, because (1) the order convening the same was made by the county court, instead of the county judge, as required by Code Civ. Proc. § 355, and Code Cr. Proc. § 45; (2) the order was never published as required by either section 356 of the Code of Civil Procedure, or section 45 of the Code of Criminal Procedure. The court overruled this objection and denied this motion. The order was made in substantial compliance with the statute. The technical error in form, making it a court instead of a chamber order, must be disregarded, under the rule laid down in the cases of Regan v. Traube, 16 Daly, 154, 9 N. Y. Supp. 495; Lowerre v. Owens, 14 App. Div. 216, 43 N. Y. Supp. 467.

The question of failure to publish the order needs more careful consideration. The provisions of both Codes above referred to required the publication of the order, the one "at least once in each week, for three successive weeks before a term is held," and the other "for four successive weeks previous to the time of holding the first term under such order." Neither of these requirements was complied with in this case. Indeed, the time fixed for the holding of the court was such that the four-weeks publication of the order, as required by section 45, Code Cr. Proc., could not be made. These provisions were made for the benefit of those having business in the courts, and especially those charged with crime and liable to indictment in the courts; and it is difficult to see how they can be entirely disregarded, and yet the court held to be properly convened, and a person who is indicted and tried therein be said to be properly so indicted and tried. A person charged with crime, and who is presented to a grand jury, has a right to challenge such jury, and must do so, if at all, when the jury is called, and before it is sworn, or at least before the indictment is found. Code Cr. Proc. §§ 237–242. How is the party charged with crime to know that a court is to be held and a grand jury to be impaneled, especially when the term is an extra one, unless the notice provided by the statute is given by the publication of the order for three or four weeks before the term commences? In Northrup v. People, 37 N. Y. 203, a con-

viction for poisoning was set aside, the judgment reversed and a new trial ordered, because the court in which the trial was had was adjourned to a place in the county not designated for holding courts, and which had not been published as such; the court saying:

"The policy of the law is to inspire confidence in the administration of justice. It is the right of every citizen to know the times and places for holding the courts where his liberty or property may be put in jeopardy, and that would be a lax system of legislation, indeed, which would leave them the subjects of sudden and perhaps capricious changes. Our legislature has not so left them. They have solemnly determined that all the judges of each district shall unite in designating the places of holding courts, and required that the appointments thus made shall be published in the state paper for three weeks before any court shall be held in pursuance of them. To sanction the court at which the prisoner was convicted is to annul entirely all these provisions."

This case was referred to with approval, and was not questioned, in People v. Sullivan, 115 N. Y. 191, 21 N. E. 1039.

It is said, however, that this error may be overlooked and disregarded, under the doctrine laid down in some recent cases in the court of appeals. People v. Petrea, 92 N. Y. 144, and People v. Hooghkerk, 96 N. Y. 153, were cases where objection was made, not to the court itself, but to the grand jury that found the indictment on which the defendant was tried. It was claimed that the law under which the grand jurors were drawn was unconstitutional. The court said in the Petrea Case:

"We are of opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant in fact enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the General Statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put upon his trial. An indictment was found by a body drawn, summoned, and sworn as a grand jury, before a competent court, and composed of good and lawful men. This, we think, fulfilled the constitutional guaranty. The jury which found the indictment was a de facto jury, selected and organized under the forms of law. The defect in its constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant. We confine our decision upon this point to the case presented by this record, and hold that an indictment found by a jury of good and lawful men, selected and drawn as a grand jury under color of law, and recognized by the court and sworn as a grand jury, is a good indictment by a grand jury, within the sense of the constitution, although the law under which the selection was made is void. It will be time to consider the extreme cases suggested by counsel when occasion shall arise."

This doctrine is startling enough to the common legal mind, but it does not reach the question involved in the present case. It merely holds that we may have a de facto grand jury. It does not go to the extent of holding that we may have a de facto court. The court was a competent one, properly convened. The conviction upheld in the case was for grand larceny. The Hooghkerk Case, so far as this question was concerned, was practically the same. It was a conviction for arson.

People v. Herrmann, 149 N. Y. 190, 43 N. E. 546, and People v. Pustolka, 149 N. Y. 570, 43 N. E. 548, were cases in which the claim was made that the justice who held the court and tried the cases in the First department was not authorized to hold the court, because he was a justice of the Second department. It was held that a justice of the supreme court could hold a court in any county of the state. Of course, this decision has no application to the question we are here considering.

People v. Youngs, 151 N. Y. 210, 45 N. E. 460, was a capital case, and the question was whether the term of court at which the trial took place had been properly appointed. Section 232 of the Code of Civil Procedure provided that the justices of the appellate division in each department might fix the times and places for holding trial terms therein, and assign the justices to hold the same, or make rules therefor, and might from time to time make additional appointments and designations, or change or alter those already made, and if they had not done so before December in 1895, and every second year thereafter, then the trial justices of each department, or a majority thereof, must make such appointments and designations, and if, for any reason, such appointments were not made before the expiration of the time so specified, they must be made at the earliest convenient time thereafter. And then section 233 provided for the publication of the appointments and designations once in each week for three successive weeks before the holding of a term in pursuance thereof. The justices designated to sit in the appellate division, commencing January 1, 1896, on the 3d day of December, 1895, made the appointments and designations, of which the term in question was one, and was to convene January 20, 1896. On the 1st day of January, 1896, the justices reappointed the same terms, and redesignated the same justices to hold them. The indictment was found and filed, and the defendant was tried and convicted at the January 20, 1896, term. There appears to have been no question raised as to the proper publication of the appointments and designations. The court held: (1) That the justices, after their designation, but before January 1, 1896, had power to make the appointment and designation of the term. (2) That they had power to do this after December 1, 1895, and on the 3d day of December, 1895. (3) That any irregularity occurring before January 1, 1896, was cured by reappointment and redesignation on that day. (4) Even if such appointments and designations were not made in strict compliance with the constitution or statute, the objection would not avail to the defendant; the court having been appointed by the body which the constitution and statute had designated for that purpose. The grand jury was a de facto one, under People v. Petrea, 92 N. Y. 128. While we have no desire to criticise this decision, or refuse to be governed by it, so far as it decided any question involved therein, we have nevertheless examined the case with considerable care, by reason of the somewhat remarkable suggestions in the opinion, as indicated in our fourth subdivision above, that even if there was not a strict compliance with the constitution or the statute, in calling into life the court which found the indictment, and tried

and convicted the defendant of a capital offense, still he could not avail himself of any objection thereto. The opinion says the jury might be regarded as a good one de facto, but does not go so far as to say that the court could be upheld as a court de facto, though brought into existence in disregard of the constitution and the statute. We do not see that any such question is involved in that decision. The court had disposed of the whole question involved necessarily in the case in holding as indicated in our first three subdivisions above, and we cannot extract from the decision, as a whole, any doctrine to support the claim that a court can, as against the objection of a defendant on trial for his life, be regarded as a good court de facto where the statute and the constitution, so far as the latter is applicable, are not substantially complied with in appointing it to be held and giving notice thereof. The constitution does not apply to the appointment of terms of county courts. The provisions for this purpose are found in the statute. These provisions should be complied with, and one of the essential prerequisites to the holding of a legally constituted term is the publication of the order appointing the same as provided for by the statutes of the state. No question of notice was involved in the Youngs Case. The Northrup Case seems to be an authority directly upon the point we are considering, and never to have been overruled or criticised, even. In a case of this kind it would be an unsafe rule to hold that a county judge, who has the sole power and authority to appoint the times for holding county courts, should be permitted to appoint and hold such courts at his own will, disregarding the statute, and making appointments for such times as to render a compliance with the statute as to publishing the order impossible. Such a rule would enable a county judge in times of public excitement to call a term of his court into existence without any notice to persons charged with crime, and thus seriously interfere with their rights under the constitution and the laws of the state. We think the court was in error in denying defendant's motion to dismiss the indictment in question, and requiring him to plead thereto and to stand his trial thereon. The conclusion we have reached with reference to the court itself renders it unnecessary to examine or pass upon the other errors alleged to have been committed after the filing of the indictment and during the trial. The court not having been properly convened and held, the indictment was invalid, as were all the proceedings had by the court with reference thereto.

The judgment and all the orders appealed from should be reversed, and the indictment set aside as invalid, on the ground that the court wherein it was found was not properly organized and convened, and the defendant, if in custody, be discharged therefrom, or, if admitted to bail, his bail exonerated, or, if money has been deposited instead of bail, it be refunded to defendant, as required by section 545, Code Cr. Proc.

ADAMS, P. J., and LAUGHLIN, J., concur. McLENNAN and SPRING, JJ., concur in a reversal of the judgment on the ground of errors relating to the use of the grand-jury minutes on the trial.