The PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM HAMLIN CHILDS, Relator, v. EXTRAORDINARY TRIAL TERM OF THE SUPREME COURT and the Hon. JOHN W. GOFF, a Justice, etc., and THE PEOPLE OF THE STATE OF NEW YORK, Respondents.

First Department, July 11, 1918.

Courts — designation of Extraordinary Term of Supreme Court — failure to publish notice in compliance with order of Governor — objection to jurisdiction — writ of prohibition — validity of proceedings had in de facto court.

Under section 153 of the Judiciary Law, providing that the Governor in appointing Extraordinary Special or Trial Terms of the Supreme Court " must give notice of the appointment in such manner as, in his judgment, the public interest requires," it is made the duty of the Governor to give the notice and not merely to prescribe the manner in which it is to be given, and he cannot delegate the power to others. Hence, where the order requires that the notice be published once in each week for two successive weeks in two newspapers designated therein, and the notice was so published in one of the newspapers and was published twice in one week in the other, the order of the Governor was disregarded, the Extraordinary Term was not properly convened, and a writ of prohibition may issue although numerous other trials have been had at said Extraordinary Term.

When a person is brought before a court not duly constituted, he has the right to demand that he shall not be tried by such court.

What notice of the designation of an Extraordinary Term of the Supreme Court is essential is to be determined by the Governor and his decision is not subject to review.

A writ of prohibition is the proper remedy to prevent the acts of a court that may be such de facto but are not such de jure.

A grand jury summoned by an Extraordinary Term constituting a de facto court is a de facto grand jury, and the indictments found by it are valid and none of the formal court proceedings already had can be successfully challenged.

CLARKE, P. J., and SHEARN, J., dissented, with opinion.

RETURN of an alternative writ of prohibition.

John B. Stanchfield of counsel [Isidor J. Kresel and J. Arthur Leve with him on the brief; Stanchfield & Levy, attorneys], for the relator.

*Robert S. Johnstone, Assistant District Attorney,* of counsel [*Alfred J. Talley, Edwin P. Kilroe* and *Felix C. Benvenga* with him on the brief; *Edward Swann, District Attorney*], for the respondents.

Page, J.:

This court recently granted an absolute writ of prohibition restraining the holding of an Extraordinary Term of the Supreme Court in the county of New York (*Matter of McIntyre* v. *Sawyer,* 179 App. Div. 535). While the facts in that case are not identical with those of the case at bar, they are so strikingly similar that I am unable to distinguish them in principle. In the *McIntyre* case the Governor's order, as in this case, directed notice to be published twice in each of two daily newspapers named therein. It was published only twice in one, while the notice of an Extraordinary Term to be held at the same time by another justice, whose designation had been revoked, was published twice in the other newspaper. In the case at bar the order required that the notice should be published once in each week for two successive weeks in two newspapers designated therein. The notice was so published in one of the newspapers, and was published twice in one week in the other. The order of the Governor was disregarded in both cases. In both cases the formal and deliberate action of the Governor and his secretary " were performed in the exercise of the highest executive prerogative, with strictest regard for statutory provisions." Yet we held in the *McIntyre* case that the error of the printer, or of some one other than an official, nullified the Governor's order and " that neither the justice designated nor any other justice has jurisdiction to proceed with the trial of said action." If the manner of giving the notice is of no impòrtance and the Governor's order can be disregarded so long as the order itself conforms to the statute, I admit that the defective publication in the instant case is of no importance and the objection merely technical. But it also follows that the objection in the *McIntyre* case was the " merest technicality." Nor does the fact that in the *McIntyre* case the matter was called to the attention of the court before any proceedings were had, and that in the case at bar it was not called to our

attention until numerous other trials were had at the Extraordinary Term, distinguish the cases. If the court was not a legal court, and we were right in prohibiting it, *in limine,* from exercising its judicial functions, it would not have become a legal court merely because it had assumed to act. Its assumption of authority did not give it an authority not vested in it originally. Moreover, we are not now reviewing its past acts. At the beginning of this action the authority of the court to proceed further is challenged. A writ of prohibition deals with the future and not with the past. The court can be halted in the course of the term as well as at the beginning. This court can say, " You shall not continue to exercise a jurisdiction that you do not possess," as well as, " You shall not commence to exercise it." If our former decision was wrong, we should frankly say so. If it was right, we should follow it.

In my opinion, the decision was right and must be followed. The requirement that " the sittings of every court within this State shall be public, and every citizen may freely attend the same " (Judiciary Law [Consol. Laws, chap. 30; Laws of 1909, chap. 35], § 4), does not merely mean that the doors are to be opened to all when the court is in session, but also that the general public shall be advised of the time and place of the holding of the terms of the courts. The Legislature has provided how the time and place at which the regular Trial and Special Terms of the Supreme Court shall be held (Judiciary Law, §§ 84, 151), and for publication thereof (Executive Law [Consol. Laws, chap. 18; Laws of 1909, chap. 23], §§ 33, 82); in this manner insuring publicity. The Legislature having taken care that due publication should be made each year of the time and place of holding regular terms, although as a matter of fact these terms are held with consistent regularity at the corresponding time and the same place year after year, it certainly intended that an extraordinary term of the court should have some publicity given to the time and place at which it is to be held. The Governor is given power to appoint one or more extraordinary Special or Trial Terms of the Supreme Court, designating the time and place of holding the same and naming the justice who shall hold or preside at such term. It

is then provided that the Governor " must give notice of the appointment in such manner as, in his judgment, the public interest requires." (Judiciary Law, § 153.)   It is noteworthy that it is made the duty of the Governor to give the notice, and not merely for the Governor to prescribe the manner in which it is to be given; hence, his duty is not ended when he prescribes the manner.   For unless the notice be given in that manner, the Governor has not given the notice that the statute requires.   It is to be borne in mind that this duty is not one that is inherent in the Executive, but is a power over a co-ordinate branch of the government that is given by statute, and the power must be executed in strict accordance with the statute.   He cannot delegate the power to others. Therefore, when he declares that the public interest requires notice shall be given by publication in a certain manner, and notice is not so given, the Governor has failed to give the notice required by the statute, and a court held at an extraordinary term in pursuance of such a notice is not a *de jure* court.

The State Constitution prescribes that " no person shall * * * be deprived of life, liberty or property without due process of law." (Art. 1, § 6.)   " That is ' due process of law ' within the meaning of these words, which affords to every citizen the equal protection of the laws, and in case of accusation of crime, the right of trial by jury before one of its duly constituted tribunals having jurisdiction of the crime, under a procedure which the State prescribes." (*Matter of Buchanan,* 146 N. Y. 264, 271.   See, also, *People* v. *Johnson,* 185 id. 219, 228.)   Therefore, when a person is brought before a court not duly constituted, he has the right to demand that he shall not be tried by such a court.   The Legislature having prescribed how an Extraordinary Term of the court may be constituted, we should give effect to the statute and not dismiss its requirements as unnecessary of observance. It is our duty to enforce the statute as we find it, and not substitute our judgment for that of the Legislature as to what is or is not essential in the way of notice.   What notice is essential is to be determined by the Governor, and his decision is not subject to our review. (*People ex rel. Saranac Land & Timber Co.* v. *Supreme Court,* 220 N. Y. 487.)   We,

therefore, cannot now say that the notice which he prescribed should be given was not essential.   Presiding Justice CLARKE cites a number of cases in this and other States in which the courts have affirmed judgments rendered at terms of court thus irregularly constituted and convened, and argues therefrom that the courts of this State treat these statutory requirements as directory, and that a disregard of them is a mere technicality of which a defendant cannot take advantage, and considers this as the more enlightened and progressive view.   In my opinion, these cases show no change in the law, nor are they authorities for our guidance in the instant case, for the reason that in the case cited by him in this and the other States, with two exceptions, the objection was first taken after a judgment had been rendered, and in those two cases, while the objection was taken *in limine*, the exception was considered on appeal after final judgment.   Where the objection is taken at or before the commencement of the trial it has always been given serious consideration.   ( *Northrup* v. *People*, 37 N. Y. 203; *Stockslager* v. *United States*, 116 Fed. Rep. 590; *McMillan* v. *City of Gadsden*, 39 So. Rep. 569; *People ex rel. Orman* v. *Riley*, 16 Cal. 186; *Toler* v. *Commonwealth*, 94 Ky. 529; *Flanagan* v. *Borg*, 64 Minn. 394; *Stovall* v. *Emerson*, 20 Mo. App. 322.)   The reason why the objection made after judgment is not considered of much merit unless the defendant can show that in some manner he has been deprived of a substantial right is twofold: *First.* If the defendant thinks proper, instead of moving for a writ of prohibition, to proceed to trial without setting up the objection, and is defeated, the objection comes too late, not that acquiescence conferred jurisdiction, but the court, considering the conduct of the party and the importance of making an end to litigation, would decline to interpose except upon an irresistible case.   Such was the recognized rule of the common law.   (*Mayor of London* v. *Cox*, L. R. 2 H. L. 239, 282.)   *Second.* Where a court is held by a judge authorized to hold it, and at a place where the court legally could be held, it is a *de facto* court, although it was defectively organized so that it was not a *de jure* court.   As with all other *de facto* bodies or officers, the acts done, the things accomplished, upon the principles of policy and justice, will be held valid

and binding. But such a court, body or officer may by appropriate proceedings be prohibited in advance from exercising the powers that should only be exercised by a court, officer or body *de jure*. The writ of prohibition is the appropriate remedy to prevent the acts of a court that may be such *de facto* but is not *de jure*. (*Quimbo Appo* v. *People*, 20 N. Y. 531; *People ex rel. Jerome* v. *General Sessions*, 185 id. 504, 506; *Matter of Metz* v. *Maddox*, 189 id. 460; *People* v. *Nugent*, 57 App. Div. 542; *Matter of McIntyre* v. *Sawyer*, *supra*.) Upon the ground that the court so far held at this Extraordinary Term was a *de facto* court, I agree with Presiding Justice CLARKE that the grand jury summoned by it was a *de facto* grand jury and the indictments found by it are valid, and that none of the formal court proceedings heretofore had can be successfully challenged.

The relator also asks that the writ of prohibition issue on the ground that no grand jury has jurisdiction to return an indictment, nor has any court jurisdiction to entertain a criminal action, against the relator on the matters therein set forth. The indictment against the relator set forth facts tending to show violations of section 546 of the Election Law (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd. by Laws of 1910, chap. 429). Upon the back of the indictments reference is made to section 751 of the Penal Law, as well as section 546 of the Election Law, the inference being that by violating section 546 of the Election Law, section 751 of the Penal Law became operative. Section 751 of the Penal Law is entitled: " Misdemeanors at, or in connection with, political caucuses, primary elections, enrollment in political parties, committees, and conventions." Not one of its thirteen subdivisions refers to any act done or committed with reference to the general election. It is not open to discussion that section 751 refers only to primary elections and conventions, or activities with respect to a nomination to office. (*People* v. *Willett*, 213 N. Y. 368. See exception in Penal Law, § 750.)

It appears from the facts alleged in the indictment that the relator was charged with acts violative of the " Corrupt Practices Act " (Election Law, art. 16, as renum. from art. 20 by Laws of 1913, chap. 800). For violations of that

article there is provision made for a civil proceeding to be instituted by the presentation by the Attorney-General, district attorney, a candidate voted for at the election, or by any five qualified voters who voted at the election, of a written petition setting forth any failure or failures to comply with the provisions of that article, the facts showing such failure or failures, and the names of the person or persons, or committee or committees, charged with such failure or failures. (§§ 550, 551.) Upon presentation of such petition and giving an undertaking, the court or justice is required forthwith to issue an order to show cause, which must be personally served upon the person or persons named in such petition, or left at his or their last known place of residence. (§ 552.) " Upon the return of the order to show cause provided for in section five hundred and fifty-two, the court, or justice, shall immediately, and in such manner as the court or justice shall direct, and without respect to any technical requirement, inquire into the facts and circumstances and into such violations of, or failure to comply with, the provisions of this article, as may be alleged in any such petition, or into such other facts and circumstances relative to any such election or to any contribution or expenditure made in connection therewith, which at any time, whether before or during the continuance of such inquest, the court or justice holding such inquest shall deem necessary to secure compliance with the provisions of this article or to punish for a violation thereof. Such other persons as the court, or justice, shall deem necessary or proper to join or bring in as parties to the said proceeding in order to make its order, judgment or writs effective, may be joined as parties in such manner and upon such notice as said court or justice shall direct." (§ 554.) The Attorney-General, a district attorney, or some person designated by either, or by the court or justice, shall attend the inquest and examine the witnesses, and the persons or committees by or against whom the proceeding is brought shall have the right to appear by counsel at the inquest, produce evidence, and examine and cross-examine witnesses in their own behalf. Ample power to issue subpoenas for witnesses and for the production of books and papers and to punish for a failure to obey is given, and no person shall be excused

from attending and testifying or from producing any books, papers or other documents, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to convict him of a crime, or subject him to a penalty or forfeiture. (§§ 557, 558, 559.) The act provides for a judgment to be rendered by the court or justice. If it shall appear that the failure to act or the act done was without willful intent to defeat the provisions of this article, it shall require the filing of a statement or an amended statement, so that the same shall be true and complete. If, however, the failure to act or the act done was due to a willful intent to defeat the provisions of this article, the person or persons, or committee or committees, shall be liable to a fine not exceeding $1,000 or imprisonment for not more than a year, or both. If it shall appear that the act was not violated, judgment is to be given against the applicants and in favor of those proceeded against for costs and disbursements to be taxed by the court or justice. (§ 560.)

I have referred thus extensively to the provisions of the act to show that a full and complete remedy is provided by the terms of the act for any and every violation of the act by a civil proceeding. It is well settled that where a statute creates a new offense and prescribes a particular penalty and mode of proceeding, that penalty alone can be enforced, and in the manner prescribed by the statute. It is exclusive of all other remedies. Chief Judge Church, speaking for the court in *People* v. *Hislop* (77 N. Y. 331), said (at p. 333): "When a statute creates a new offence, and makes that unlawful which was lawful before, and prescribes a particular penalty and mode of proceeding, that penalty alone can be enforced. The offence in such case is not indictable (*People* v. *Stevens*, 13 Wend. 341; *People* v. *Brown*, 16 id. 561; *Rex* v. *Wright*, 1 Burr. 543)." "The intent of the Legislature to elevate an act to the importance of a crime cannot be imputed by loose inferences and doubtful implications, but must be made to appear with reasonable certainty. We may guess that the Legislature intended to make all prohibited acts criminal offences, but it is impossible to so affirm with any degree of certainty, and the fact that they did not so declare is indicative that they did not so intend" (p. 335).

Prior to the enactment of the Corrupt Practices Act in 1906 (Laws of 1906, chap. 502, adding to Election Law [Gen. Laws, chap. 6; Laws of 1896, chap. 909], art. 9. Amd. by Laws of 1907, chap. 596) there was no statutory requirement for the performance of the acts therein prescribed, no inhibition of the acts therein prohibited. A violation thereof constituted a new offense. Hence, the only penalty for a violation thereof is that prescribed by the statute, to be enforced in the proceeding provided by the act itself. The indictment sets out that as a misdemeanor which the law does not recognize as a criminal offense. It calls for a prosecution in respect to a matter as to which no court has any authority to entertain a prosecution. The court, therefore, has no jurisdiction to determine the matter before it. Under such circumstances, a writ of prohibition is the proper and appropriate remedy. As was said by Judge SELDEN in *Quimbo Appo* v. *People* (*supra*): " The scope of this remedy ought not, I think, to be abridged, as it is far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed" (p. 542). (See, also, *Thomson* v. *Tracy*, 60 N. Y. 31; *Matter of Metz* v. *Maddox*, *supra*.) This case is clearly distinguished from those where there is a crime of which the court would have jurisdiction if the fact set forth in the indictment sufficiently alleged the offense. In the instant case the facts alleged sufficiently set out the violation of section 546 of the Election Law, but such violation does not constitute a criminal offense.

The Corrupt Practices Act provides for a civil proceeding in which the person proceeded against has an opportunity to confront and cross-examine witnesses, call witnesses in his own behalf, explain the seeming violation, and, if not willfully committed, an opportunity is afforded to correct the error. It was the intention of the Legislature, clearly expressed, that a full opportunity of exculpation should be given in a civil proceeding. It is proper to state that upon the second point discussed the views expressed are personal. The majority of the court recognize the serious nature of the claim urged by the relator, but decline to pass upon it at this time for the reasons stated by the presiding justice.

An · absolute writ of prohibition should be granted in this case.

Laughlin and Smith, JJ., concurred on the first ground; Clarke, P. J., and Shearn, J., dissented.

Clarke, P. J. (dissenting):

Relator asks for an absolute writ of prohibition to restrain an Extraordinary Trial Term of the Supreme Court and the justice holding and presiding thereat, from proceeding with the trial of certain indictments charging him, with other defendants, with a violation of section 546 of the Election Law and section 751 of the Penal Law, found against him at the said Extraordinary Term and now pending before it. He claims that the direction of the Governor concerning the publication of the order appointing the term was not complied with and that, therefore, the Extraordinary Term is an illegally constituted court and, in short, no court, and that, therefore, the grand jury which found the indictments was without jurisdiction and the Extraordinary Term is without jurisdiction to try them.

On July 31, 1917, the Governor, pursuant to the authority vested in him by section 153 of the Judiciary Law, which provides, " The Governor may, when, in his opinion the public interest so requires, appoint one or more Extraordinary Special or Trial Terms of the Supreme Court. He must designate the time and place of holding the same, and name the justice who shall hold or preside at such term, and he must give notice of the appointment in such manner as, in his judgment, the public interest requires," appointed an Extraordinary Trial Term of the Supreme Court to be held at the county court house in the city of New York on the 27th day of August, 1917, and designated the Hon. John W. Goff to hold such Extraordinary Trial Term and directed that notice of such appointment be given by publication of the order once in each week for two successive weeks in the *Morning Telegraph* and the *Sun*, newspapers published in the city of New York.

On the 2d day of August, 1917, a copy of the order was published in the *Morning Telegraph* and the New York *Sun*. On the third day of August a copy of the order was published

in the *Morning Telegraph* and on the ninth day of August a copy of the order was published in the New York *Sun*. The publication in the *Sun* was in accordance with the direction of the Governor but that in the *Morning Telegraph* was not once in each week for two successive weeks but was for two successive days in one week. A grand jury was impanelled for the 27th day of August, 1917, and served until the 18th of January, 1918, when it was discharged.

On the eighteenth of March a panel for a new grand jury was summoned and this grand jury on the 3d of May, 1918, returned three indictments against the relator herein. Pleading to these indictments was deferred until the 22d of May, 1918. On the twenty-first an alternative writ of prohibition was issued. The petition challenged the jurisdiction of the Extraordinary Trial Term and its grand jury upon two grounds: *First.* That the Extraordinary Trial Term was never properly convened to try the relator upon the pretended indictments found against him. *Second.* That the publication was not in compliance with the order of the Governor and the failure so to comply was fatal.

It is evident that there was not a strict compliance with the order of the Governor. A publication in one of the two papers designated on two successive days in one week was not a publication once in each week for two successive weeks.

The secretary to the Governor transmitted a copy of the Governor's order to the *Morning Telegraph* in a letter which stated: " I am transmitting to you herewith a copy of the Governor's order appointing an Extraordinary Trial Term of the Supreme Court. You will note that this order should be published in two issues of your paper." The question then is whether when the Governor has issued a lawful and correct order prescribing the method of its publication, and his secretary has transmitted a copy of said order to the newspapers prescribed by him, and the order is published twice in said papers, but one of them inadvertently publishes it upon two successive days instead of once in each week for two successive weeks, the action of the Governor has been thus nullified, and the term appointed by him, in accordance with law, although held by a justice of the Supreme Court duly designated at the place and time appointed, all

the other requirements of law having been duly and fully complied with, is without jurisdiction. The main reliance of the relator is *Matter of McIntyre* v. *Sawyer* (179 App. Div. 535). The facts in that case were quite different from those at bar. An order had been made by the Governor bearing date July 23, 1917, appointing an Extraordinary Term of the Supreme Court to be held in the county of New York on the 7th day of August, 1917, and designating Mr. Justice Rodenbeck to preside thereat, and directing that notice of the appointment be given by publication of the order twice in each of two daily newspapers published and circulated in said county. The order was published in only one of the papers designated. On the twenty-fifth of July the Governor formally revoked the designation of Mr. Justice Rodenbeck but did not revoke the appointment of the term; and on the same day by a separate executive order containing no reference to the other, an Extraordinary Trial Term was appointed for the same time and place and Mr. Justice Sawyer was therein designated to preside thereat, and that order likewise required that notice of the appointment be given by publishing it twice in each of the two daily newspapers in which notice of the first appointment had been required to be published. Notice of the second Extraordinary Term was published in one of the designated newspapers in which the other notice was not published. We said: " Said section 153 of the Judiciary Law, which confers authority upon the executive to convene extraordinary terms of the Supreme Court, expressly enjoins upon him the duty of giving notice of the appointment of an extraordinary term, but provides that the notice shall be given in such manner as in the opinion of the executive the public interests require. It was, therefore, essential that such notice be given of the appointment of the term as the executive determined the public interests required. But, as has been seen, that was not done. The executive deemed that the public interests required that publication be made in two newspapers, but the notice was published in one only. If either order or proclamation had been published as directed, we might, in accordance with the rule that such an order if susceptible of a construction which will render it valid should be so construed (*People* v. *McKane*,

80 Hun, 322; affd., 143 N. Y. 455), be warranted in holding that the executive did not intend to create two extraordinary terms and that the sole object of the second appointment was to substitute a justice to preside; but since the second order does not refer to the first and purports to convene another extraordinary term and neither order was published as therein directed, we deem it unwise to attempt a strained construction which might affect the validity of a very long and expensive trial."

There is no difficulty in distinguishing that case from the one at bar. There the Governor had issued two apparently conflicting orders and his direction for publication in two newspapers had not been complied with as to either of his orders. The matter was called to the attention of this court before any proceedings had, and, in view of the exceedingly long and technical trial in contemplation, it was deemed wise and in the public interests to arrest the matter *in limine* in order that a new start might be made and embarrassing questions avoided. The result proved the wisdom of our determination. That case, however, was not decisive, and was not intended to be, of the question here raised. The point presented, as I view it, is the merest technicality. If sustained it would subject the formal and deliberate action of the Governor and his secretary, performed in the exercise of the highest executive prerogative, with the strictest regard for statutory provisions, to nullification by a printer's error. The purpose of public notice is to insure the honest administration of justice and to maintain the confidence of the people in the integrity of the judiciary, in conformity with the law requiring the courts to be open to the public. In this case notice of the term was published twice in two daily newspapers published in the city of New York in August, 1917. An order for the drawing and summoning of a grand jury was duly made on August sixth in accordance with section 226 of the Code of Criminal Procedure which provides: " A grand jury may also be drawn: * * * 4. For an Extraordinary Term of the Supreme Court or a term thereof for which a trial jury is not required to be drawn, upon the order of the justice named to hold or preside at the same."

This order was entered upon the minutes and a copy thereof

842 People ex rel. Childs *v.* Extraordinary Trial Term.

First Department, July, 1918. [Vol. 184.

filed with the county clerk at least twenty days before the term as provided in section 227 of the Code of Criminal Procedure. Pursuant thereto a panel of grand jurors was duly selected, drawn, returned and attended, from which a grand jury was duly selected, sworn and impanelled on August 27, 1917. It then entered upon the discharge of its duties, found certain indictments and on January 18, 1918, was discharged. On February 21, 1918, an order was duly made by the justice presiding for the drawing of another grand jury for said Extraordinary Term and pursuant thereto a panel was duly selected, drawn, returned and attended on March eighteenth, from which a grand jury was impanelled on March 18 and 19, 1918.

The relator, and the other defendants indicted with him, had full knowledge of the existence of the Extraordinary Term and its grand jury. On December 17, 1917, the defendant Newcomb made a statement to the district attorney concerning his activities in relation to the election. On December 18, 1917, the defendant Sulzer and on December 20, 1917, the relator with his counsel did the same. On January ninth and March first the defendant Healey also made a statement to the district attorney in relation to the matter under investigation. So that long before the impaneling of the grand jury all four defendants were aware of the fact that their conduct in connection with said election was the subject of investigation and inquiry. At the time the grand jury was being selected touching their qualifications, Mr. Kresel, counsel for relator Childs was presented in court accompanied by a stenographer who took minutes of the proceedings on the said examination. Each of the defendants signed a waiver of immunity and all of them appeared before the grand jury. After the indictments were found in May, 1918, the relator was arraigned and held to bail, but before the date set for pleading he sued out the alternative writ of prohibition. Before that time numerous other trials had been had before the Extraordinary Term. As appears from this record, not only had there been preliminary publications of the appointment of the term, but very considerable notoriety regarding its proceedings. Personal notice had been brought home to the relator and the other defendants indicted with

him.   So that, as a matter of fact, the general policy requiring publicity in court proceedings had been thoroughly satisfied. Further relator and his counsel were personally apprised that his conduct in the matters under consideration were being inquired into and he had the fullest opportunity to explain his conduct before the district attorney and the grand jury. He also had notice of the time of the drawing of the grand jury and was not, therefore, deprived of his right to challenge members thereof.

Under such circumstances it is evident that there is no substance in the objection but that it is the merest technicality. In my opinion the time has long since passed in this State for formal court proceedings to be nullified by such matters. The attitude of the courts of this State in later years is shown by the following cases:

In *People ex rel. Weick* v. *Warden of City Prison* (117 App. Div. 154; affd., on opinion below, 188 N. Y. 549) where the court changed the place of holding the court from the Criminal Court Building to the County Court House and continued its term beyond the term of another term appointed by the Appellate Division, in affirming an order dismissing a writ of habeas corpus this court said: " We think the objection entirely without merit.   The time has passed in this State when a person indicted for crime, having been tried by a court organized as required by the Constitution, presided over by a judicial officer duly elected to preside, and where all the rights of the accused have been carefully preserved and guarded, may have his conviction set aside upon a technical claim such as that presented."

In *People* v. *Sullivan* (115 N. Y. 185) a trial had commenced on the twelfth of March and had adjourned until the next day, March thirteenth.   On the adjourned day no court was held.   On the fourteenth the trial proceeded.   After conviction a motion was made in arrest of judgment upon the ground that the court upon the twelfth of March having adjourned to meet on the morning of the thirteenth, and not meeting on that day, it was thereby dissolved and had no right to meet on the day thereafter, and that all proceedings before such court were *coram non judice* and void for want of jurisdiction.   The motion was overruled.   Upon appeal to

844 People ex rel. Childs *v.* Extraordinary Trial Term.

First Department, July, 1918. [Vol. 184.

the General Term that court reversed (49 Hun, 333), but the Court of Appeals in turn reversed and sustained the conviction, stating by Peckham, J.: " The question in this case is of the most technical nature. No harm is claimed to have come from the action of the court in proceeding with its business on the fourteenth instead of the thirteenth of March. It is not claimed that the prisoner's rights were in any way jeopardized, or that he lost the benefit of any evidence which he would otherwise have had. Nothing but the clear and simple allegation of a loss of jurisdiction exists. * * * We cannot think that any rule of law compels us to set aside this verdict."

In *People* v. *Petrea* (92 N. Y. 128) the court said: " The objection to the constitution of the grand jury which found the indictment, lies solely in the fact that they were drawn, under the provisions of a void statute, from the petit jury list, whereas they should have been drawn from a list of grand jurors, specially selected to serve as such by the supervisors of Albany county. In all other respects the proceedings were regular. * * * We are of opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the general statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant under the circumstances of the case," and sustained the conviction.

In *People* v. *Herrmann* (149 N. Y. 190), a murder case, the defendant was tried before Mr. Justice Keogh at a Criminal Term of the Supreme Court held in the county of New York. Mr. Justice Keogh was not a justice of the First Department but had been assigned to hold the term by the Appellate Division thereof. The defendant moved in arrest of judgment upon the ground that " neither this court nor your honor now has, or ever did have, jurisdiction either of the person of this defendant or of the subject-matter of this indictment, for the reason that the assignment of your honor

to sit and hold this court, by the Appellate Division of the first department, is illegal, invalid and without authority in law." The court held " that while the written assignment of Mr. Justice KEOGH by the justices of the Appellate Division of the first department cannot be regarded as made under the provisions of the Constitution and the Code therein referred to, yet it may be treated as a very proper invitation on the part of the learned judges signing it, addressed to Mr. Justice KEOGH, asking him to hold the February Criminal Term in the city of New York," and that while he was at liberty to have declined it had he seen fit to do so, having accepted it, he was authorized to hold the term of court in question, and affirmed the conviction.

In *People* v. *Youngs* (151 N. Y. 210), a murder case, defendant was indicted at a term of court held on January 20, 1896, which was appointed by the justices of the Appellate Division in the Third Department on December 3, 1895. The court said: " The justices were required to make these appointments by article 6, section 2, of the new Constitution and also by section 232 of the Code of Civil Procedure. It is true that by the provisions of the Code they were required to make the appointments before the first day of December, 1895; but this we think was directory, and the fact that they did not make the designations until three days afterwards, does not, we think, affect the validity of the act. * * * The designation of the particular day was, as we have already remarked, directory, and the observance of the date was not essential to the jurisdiction to perform the act. * * * But even if this were otherwise, and it could be said that the designation of the terms of the court was not in strict compliance with the Constitution or the statute, the objection would not, we think, avail the defendant. The court in which the indictment was found was appointed to be held by the body which the Constitution and the statute had designated for that purpose. The grand jury was regularly drawn from the body of the county, summoned and sworn as provided by law. It was at least a *de facto* jury, selected and organized under the forms of law, and that was sufficient for the protection of all the defendant's constitutional rights."

In *People* v. *Duffy* (212 N. Y. 57) the appellant contended that the term of court at which he was tried and convicted was not legally convened and organized. In November, 1912, the justices of the First Appellate Division appointed a series of Trial Terms and amongst them a term commencing on the first Monday of June, 1913, and duly assigned Mr. Justice Page to hold said term. Thereafter said justices designated Mr. Justice Goff in the place of Mr. Justice Page. Mr. Justice Goff duly convened the court and held the same until June twelfth, when an order was entered on the minutes of the court adjourning the term without day. June 18, 1913, the justices of the Appellate Division made an order appointing a new Trial Term commencing Monday, June twenty-third, and assigned Mr. Justice Seabury to hold the same. It was at the term commencing on the last-mentioned date that the defendant was tried and convicted and the complaint against the legality of the term was, that it was not lawfully held because no notice of the appointment of said term was or could be published once a week for three consecutive weeks before the term commenced as provided by section 33 of the Executive Law (Consol. Laws, chap. 18; Laws of 1909, chap. 23). There was no publication whatever of the appointment. Section 151 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35) provides: " An appointment of terms of the Supreme Court made as prescribed in this chapter must be signed by the justices making it, and immediately filed in the office of the Secretary of State." Section 33 of the Executive Law provides: " The Secretary of State must immediately publish a copy of an appointment, filed with him, of a term or terms of an Appellate Division in the newspaper printed at Albany in which legal notices are required to be published at least once in each week for four successive weeks and he must publish a copy of an appointment, filed with him, of a term or terms of the Supreme Court in such newspaper at least once in each week, for three successive weeks before the holding of a term in pursuance thereof." While the Court of Appeals not having had section 151 of the Judiciary Law called to their attention stated that the words " such designations " used in the Judiciary Law, section 84, might be taken as requiring the

filing with the Secretary of State and hence the publication only of the ordinary or regular terms made before December first of each year for the ensuing year, they assumed that there was a possibility that statutory provision existed which required the filing and hence the publication of additional terms as we now see is provided for by said section 151, and the court said: " But if it should transpire that through failure to discover some other applicable statutory provision there is some flaw in this answer to defendant's contention, another effective one may be made on the broad merits of the proposition which he argues. * * * He had timely notice of the term at which he was tried, and there is no doubt that the jury before whom he was tried was selected from a panel summoned under and in accordance with the provisions of a valid statute. The court itself was appointed by the Appellate Division which had power to appoint it, and all of its proceedings were conducted in accordance with the due forms of law as prescribed by the Constitution and by the statute. It is not claimed that the defendant's rights were in any manner diminished or prejudiced by the alleged omission of which he complains, and under such circumstances his objection of a purely technical nature and outlining no real harm to him, even if otherwise well made, will not be upheld for the purpose of reversing the judgment."

While it may be said that the decisions above referred to, having been made after trial and conviction, only go to the extent of upholding the judgments as made by *de facto* juries and courts, where no substantial right of the defendant has been invaded, yet they are convincing authorities that even in murder cases the courts of this State are more and more regarding substance and not shadow and pay little attention to unimportant technicalities.

In my opinion when the Governor has fully complied with the provisions of the law governing the appointment of an Extraordinary Trial Term of the Supreme Court, and his due and lawful order has been transmitted to the newspapers designated by him, the provision as to the dates of publication become directory merely, and not mandatory, and a failure to strictly comply therewith does not affect the legality of the constitution of the court nor its jurisdiction. Statutory pro-

visions for notice by publication of terms of court have been held to be directory merely and not affecting the jurisdiction of the court in other States. (*Friar* v. *State,* 4 Miss. [3 How.] 422; *Blimm* v. *Commonwealth,* 70 Ky. [7 Bush.] 320; *State* v. *Claude,* 35 La. Ann. 71; *Harman* v. *Copenhaver,* 89 Va. 836; *Collier* v. *State,* 20 Ark. 36; *State* v. *Shanley,* 38 W. Va. 516.)

While some of these cases fall under the *de facto* rule, the claim having been made for the first time on appeal, in two at least, the point was raised *in limine.*

In *State* v. *Claude* (*supra*) a motion was made on the trial to quash a venire of jurors. One of the grounds stated was that the term was not called according to law and, therefore, was an illegal term. The motion having been denied, upon appeal the court said: " This objection is of the most radical character, attacking the jurisdiction and power of the Judge to perform any judicial functions at such a term, and, if sustained, would strike with nullity all his proceedings." The statute, section 1932 of the Revised Statutes of Louisiana, provided: " Whenever a special term of the court shall be ordered, the Judge ordering the same shall notify the clerk of the court, and he shall give notice thereof by publication in one or more newspapers published in the parish where the court is to be held, if there be one; and by notice posted on the door of the courthouse, at least thirty days before the commencement of the term." The clerk caused publication in a newspaper to be made but neglected to post the notice on the court house door. The court said: " The question is, whether the right of the Judge to hold the special term, called by him in the exercise of express statutory authority, and after compliance with every duty imposed on him, can be defeated by failure of the clerk to perform a duty in connection therewith imposed by law upon him. If so, it would give the clerk the extraordinary power of nullifying the authority vested by the law in the Judge and of preventing the holding of any special term. Such a doctrine cannot receive our assent. * * * We feel fully justified in holding that its omission did not invalidate the call or destroy the jurisdiction at the term, especially as the failure of notice was partial only, and as the complaint

of its sufficiency is purely technical, unsupported by any suggestion of actual injury."

In *State* v. *Shanley* (*supra*) a motion was made at the trial to quash the warrant of the judge appointing the Special Term because the record thereof made by the clerk in vacation did not show that it was posted at the door of the court house as required by statute. (W. Va. Code, chap. 112, § 5.) The Supreme Court of Appeals said: " Being no part of the warrant, but merely a part of the clerk's ministerial duty in regard to what he should do after receiving and recording the warrant, his failure to post a copy could not have the slightest effect on the validity of the warrant, or on the power to hold court under it, and, as the court had jurisdiction to hold the term and dispose of defendant's case, there could be no ground of continuance for want of such jurisdiction."

The proposition is well stated in the brief of the district attorney as derived from the cases cited as follows:

" That where the appointing power does everything on its part to be performed, jurisdiction is established; and that the failure of ministerial agents to perform their part is a mere irregularity — which may or may not be conducive to error, according as it has or has not operated to deprive the particular person of a substantial right."

The second point presented by the relator is that no grand jury has jurisdiction to return an indictment for the matters set forth in these indictments and neither the Extraordinary Trial Term nor any court has jurisdiction to entertain a criminal action against the relator based upon the matters therein set forth, specifically that the penalty provided by section 560 of the Election Law is the exclusive one for any violation of section 546 of the Election Law (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd. by Laws of 1910, chap. 429) and that section 751 of the Penal Law has no application. Assuming that there may be matter of substance in this claim it cannot be tested by writ of prohibition.

In *People ex rel. Livingston* v. *Wyatt* (186 N. Y. 383) a witness subpœnaed in a John Doe proceeding sued out a writ of prohibition. The court said: " We are of the opinion that the subpœna issued by the magistrate was void upon

850 People ex rel. Childs *v.* Extraordinary Trial Term.

First Department, July, 1918. [Vol. 184.

its face and that it called for obedience to its commands on the part of no one. We are also of the opinion, however, that while there is strong reason for believing that in this case criminal process has been used for improper purposes, still, that prohibition is not the proper remedy. The writ of prohibition is not favored by the courts. Necessity alone justifies it. Although authorized by statute, it is not issued as a matter of right, but only in the exercise of sound judicial discretion when there is no other remedy. While it issues out of a superior court and runs to an inferior court or judge, its object is not the correction of errors nor relief from action already taken. In no sense is it a substitute for an appeal, as its sole province is to prevent the inferior tribunal from usurping a jurisdiction which it does not possess, although it runs against the exercise of unauthorized power in a proceeding of which the lower court has jurisdiction, as well as when the proceeding itself is instituted without jurisdiction. The sole question to be tried is the power of the inferior court or magistrate to do the particular act in question. * * * It is justified only by ' extreme necessity ' when the grievance cannot ' be redressed by ordinary proceedings at law, or in equity, or by appeal.' " (Citing cases.)

And in that case it held that the relator's remedy was by habeas corpus and " if relief were refused in the first instance, there was a right of appeal to the Appellate Division and to the Court of Appeals, so that ultimate if not immediate justice was certain. * * * This remedy was open to the relator and his application for a writ of prohibition was properly denied, because that form of relief can be resorted to only when there is no other."

The Supreme Court is a court of general jurisdiction. The objections that the facts set forth in the indictment do not constitute a crime can be taken by demurrer, at the trial under the plea of not guilty, and in arrest of judgment. An appeal may be taken to the Appellate Division and to the Court of Appeals.

In *People ex rel. Hummel* v. *Trial Term* (184 N. Y. 30) the defendant moved for an order quashing the indictments upon the ground that he had been compelled to testify against himself before the grand jury. This motion was denied and

then the relator obtained an alternative writ prohibiting the justice from proceeding with the trial until the further order of the Appellate Division. Upon the hearing the Appellate Division denied relator's application for an absolute writ of prohibition as a matter of law, which order was affirmed by the Court of Appeals, which said: " We are thus brought to the consideration of the question as to whether the relator had a remedy for his grievance by ordinary proceedings either at law or in equity or by appeal. We think he did, and that he availed himself of the remedy when he moved in the action for a quashing or a dismissal of the indictments.  *  *  * The ruling thereon is, therefore, under section 517* reviewable by the Appellate Division, and the determination of that court may be reviewed by an appeal to this court under section 519, subdivision 3,* which authorizes us to review a final determination of the Appellate Division affecting a substantial right of the defendant."

Therefore, as an adequate remedy is provided by law and the Extraordinary Trial Term of the Supreme Court has jurisdiction both of the person of the relator and to pass upon the sufficiency of the indictment, and its determination thereon can be tested by appeal, the writ of prohibition will not lie. It follows, therefore, that the application for an absolute writ of prohibition must be denied and the alternative writ heretofore issued quashed.

SHEARN, J., concurred.

Motion for absolute writ of prohibition granted. Order to be settled on notice.

---

* Code Crim. Proc. §§ 517, 519, subd. 3.— [REP.