## Court of Oyer and Terminer—New York County.

*February*, 1888.

## PEOPLE *v.* SQUIRE.

INDICTMENT.—CONSPIRACY.—PENAL CODE, SECTION 168.— OVERT ACTS.

An indictment states a conspiracy for the perversion and obstruction of justice and of the due administration of the laws, and is sufficient, under section 168 of the Penal Code, which alleges an agreement between the defendants that one of them should procure the appointment of another to an office, to wit, the office of commissioner of public works in the city of New York, and that in consideration of the obtaining of such appointment the defendant who should be appointed commissioner, while apparently carrying out the duties of his office would in effect abdicate it, and place his resignation in the hands of said other defendant whenever the same might be demanded, and make no appointments in said office without the approval of said co-defendant, that he would make such removals therein as that

co-defendant might suggest and request, and would transact the business of said office as he might direct.

Such an agreement is not an offer to appoint a co-defendant as the deputy of said commissioner in consideration of his procuring the appointment of the other defendant as commissioner, but is an agreement to entirely surrender all the powers of the office, including a resignation therefrom, without limit as to time.

Where, in such an indictment, the more general words that the parties did "unlawfully, wickedly, and corruptly conspire and agree together" to procure the appointment of one defendant for said office by and through the corrupt means of procurement of them, etc., to be nominated by the mayor, etc., to be appointed as commissioner of public works, etc., are followed by an allegation that the acts were done with the corrupt and wicked understanding and agreement and with intent that upon and in the event of one defendant S. being appointed to the office, he should transact the business thereof as another defendant F. might and should direct, etc., and that said defendant S. in pursuance of said further conspiracy gave the above mentioned agreement to his co-defendant F., there is sufficient designation of the means by which the conspiracy was to be effected and carried out.

It was contended by defendants that the agreement in question was not a conspiracy for the reason that there was no one act which the parties agreed to do. *Held*, that the offense charged by the indictment was a conspiracy for the perversion and obstruction of justice and due administration of the laws, to effect which object several acts were to be done leading or tending to the general result, which was the crime charged.

Overt acts in pursuance of the conspiracy are sufficiently set forth by the allegations of the indictment that one defendant in pursuance and furtherance of the conspiracy between himself and the other defendants, did make application to the mayor to be nominated, etc., in pursuance thereof, and did make, sign, and deliver to the other defendants the agreement set forth in the indictment.

Demurrer to an indictment for conspiracy by defendants, Rollin M. Squire and Maurice B. Flynn.

The facts and questions raised upon the demurrer fully appear in the opinion of the court.

*John R. Fellows*, district attorney (*Benjamin F. Dos Passos*, assistant), for the people.

*Noah Davis* and *B. W. Huntington*, for defendant Flynn.

*Howe & Hummel*, for defendant Squire.

LAWRENCE, J.—The indictment in this case is for a conspiracy, and it consists of twenty-two counts. A general demurrer has been interposed by each of the defendants, and it therefore follows that if any one of the counts contained in the indictment is good, the demurrer must be overruled.

The definition of conspiracy is contained in section 168 of the Penal Code, which provides that "if two or more persons conspire either, 1, to commit a crime or . . . 6, to commit any act injurious to the public health, to. public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws, each of them is guilty of a misdemeanor."

Elaborate arguments have been heard in support of and against the demurrers. After considering them, I have reached the conclusion that the demurrers must be overruled on the ground that in the sixteenth count, if in no others, a case of conspiracy as the same is defined by section 168 of the Penal Code is made out. In that count, the grand jury accused the defendants of the crime of conspiracy, committed as follows :

"And the grand jury aforesaid, by this indictment, further accuses the said Rollin M. Squire and Maurice B. Flynn of the crime of conspiracy, committed as follows :

"Heretofore, to wit, on the 26th day of December, in the year aforesaid, at the city and county aforesaid, the term of a certain public officer, to wit, the commissioner of public works of the city of New York, had then lately before expired, and the mayor of said city was then about to nominate, and by and with the consent of the said board

of aldermen of the city of New York, to appoint some person as such commissioner of public works, for which appointment as such commissioner of public works the said Rollin M. Squire was then and there an applicant and candidate. And the said Maurice B. Flynn on the day and in the year aforesaid was then and there and for a long time prior thereto had been and then intended thereafter to continue and remain, engaged, and interested in the business of procuring, soliciting, and executing awards, orders, and contracts, and in the procuring, soliciting, and executing of awards, orders, and contracts, let and awarded and to be let and awarded by the head of the department of public works, to wit, the commissioner of public works, of the city of New York, for work done and supplied and to be done and supplied for and on account of the corporation of the city of New York, the expense, price, and consideration of which was payable, and was to be payable, from the city treasury, and was by reason thereof ineligible to the said office of commissioner of public works, as they, the said Rollin M. Squire, Maurice B. Flynn, Hubert O. Thompson, and the other evil disposed persons hereinafter mentioned, then and there well knew.

"Nevertheless the said Rollin M. Squire, and Maurice B. Flynn, both late of the city and county aforesaid, together with said Hubert O. Thompson and the said other evil disposed persons unlawfully, wickedly, and corruptly contriving and intending to obstruct, defeat, and pervert the due administration of the law, and to get in their hands and control the said office of commissioner of public works, for their own most wicked and corrupt ends and purposes, afterwards, to wit, on the day and in the year aforesaid, at the city and county aforesaid, did unlawfully, wickedly, and corruptly conspire, combine, confederate, and agree together between and amongst themselves to cause and procure him, the said Rollin M. Squire, by and through the corrupt means and procurement of them, the said Rollin M. Squire, Maurice B. Flynn, Hubert O. Thompson, and the said other

evil disposed persons, to be nominated by the mayor of the city of New York, and by and with the consent of the said board of aldermen of the said city of New York, to be appointed as such commissioner of public works, upon a corrupt and wicked understanding and agreement, and with intent that, upon and in the event of the said Rollin M. Squire being appointed to the said office, he, the said Rollin M. Squire, should transact the business of the said office as the said Maurice B. Flynn might and should direct, and should and would make no appointment of any subordinates, clerks, or employes of and appertaining to the business of the said office, without the approval of the said Maurice B. Flynn, and would and should make such removals of any and all of such subordinates, clerks, employes as the said Maurice B. Flynn might and should suggest and request, and that the said Rollin M. Squire should and would, upon and in the event of such appointment, grant to the said Maurice B. Flynn the right and authority to discharge any and all of the functions of the said office, and should and would permit him, the said Maurice B. Flynn, to make any and all of the appointments and to perform any and all of the duties necessarily touching and being incidental to the administration of the said office.

" And the said Rollin M. Squire, in pursuance and furtherance of, and according to, the said conspiracy, combination, confederacy, and agreement between himself and the said Maurice B. Flynn, Hubert O. Thompson, and the said other evil disposed persons, as aforesaid, afterwards, to wit, on the day and in the year aforesaid, in the city and county aforesaid, did personally appear before the said mayor of the said city of New York and did make application to the said mayor to be nominated as such commissioner of public works, in due form of law, and did then and there cause and procure the said mayor to duly nominate him, the said Rollin M. Squire, as such commissioner of public works.

" And the said Rollin M. Squire, in the further pursuance and furtherance of, and according to the said conspiracy,

combination, confederacy, and agreement as aforesaid, afterwards, to wit, on the day and in the year aforesaid, at the city and county aforesaid, did unlawfully, wickedly, and corruptly make, sign, and subscribe, and deliver to the said Maurice B. Flynn and Hubert O. Thompson, a certain paper in writing, in these words following:

"NEW YORK, December 26, 1884.
" MAURICE B. FLYNN, Esq.

" DEAR SIR : In consideration of your securing not less than four County Democracy aldermen who shall vote for my confirmation as commissioner of public works, in the event that the mayor shall send in my name for that office, I hereby agree to place my resignation as commissioner, in case of my confirmation, in your hands whenever you may demand the same, and further, to make no appointment in said office without your approval, and to make such removals therein as you may suggest and request, and to transact the business of said office as you may direct.
" Very truly yours,
" ROLLIN M. SQUIRE.

—to the manifest perversion and obstruction of the due administration of the laws, to the pernicious example of all others in like cases offending against the form of the statute in such case made and provided, and against the peace of the people of the State of New York, and their dignity."

It is claimed that this count does not state any offense which is known to the law, and that, therefore, the demurrer should be sustained. It is said, that it is perfectly proper that two or more persons should attempt to procure the appointment of another to an office, and that there is no allegation in this count that any corrupt means were resorted to, or agreed to be resorted to, in procuring the nomination and appointment of the defendant, Squire. I do not so read the count. The fair construction of that

count, is, that, in consideration of the obtaining of such appointment, Squire would in effect abdicate his office and place his resignation in the hands of Flynn, in case of his confirmation, whenever the same might be demanded, and make no appointments in said office without Flynn's approval, and to make such removals therein as Flynn might suggest and request, and transact the business of said office as he might direct.

It seems to me that there is there stated a conspiracy for the perversion or obstruction of justice, and certainly of the due administration of the laws.

Under the charter or Consolidation Act, providing for the appointment and prescribing the duties of the commissioner of public works, it is quite clear that it was the intention of the Legislature, and of the people whom they represented, that the duties of the office should be performed and transacted by the commissioner in person, and not by one wholly disconnected therewith.

It is urged by the counsel for the defendants, that inasmuch as by section 315 of the Consolidation Act, "The commissioner of public works may appoint a deputy commissioner of public works, who shall, in addition to his other powers, possess every power, and perform all and every duty belonging to the office of said commissioner, whenever so empowered by said commissioner by written authority designated therein, a period of time, not extending beyond the period of three months, nor beyond the term of office of the said commissioner of public works, during which said power and duty may be exercised, and such designation and authority shall be duly filed in and remain on record in the department of public works, and that the said deputy commissioner of public works shall possess the like authority in case of the absence or disability of the commissioner of public works," that it must be intended that all that was meant by the letter set forth in the indictment was that Squire should appoint Flynn as the deputy pursuant to the section of the statute just referred to. I do

not think that that is the proper or legitimate interpretation to be placed upon that letter. It is not an offer to appoint the deputyship in consideration or Flynn's doing the act therein referred to, but to entirely surrender all the powers of the office, including a resignation therefrom, without limit as to time. Therefore, I do not think that the presumption which would generally arise, that a party intended to act legally and not illegally, is to be applied to the letter in question.

As before stated, it is claimed that no illegal means were to be resorted to, in carrying out the agreement which is alleged to be a conspiracy. While it may be true that the more general words of the count, to wit: that the parties did "unlawfully, wickedly and corruptly conspire and agree together and between and amongst themselves to cause and procure him, the said Rollin M. Squire, by and through the corrupt means and procurement of them, etc., to be nominated by the mayor, etc., and by and with the consent of the said board of aldermen, etc., to be appointed as such commissioner of public works," would not be a sufficient designation of the means to be employed in effecting the alleged illegal object, yet, as these words are followed by an allegation that the acts were done upon a corrupt and wicked understanding and agreement, and with intent that upon and in the event of Squire being appointed to the office, he should transact the business of said office as Flynn might and should direct, etc., and that the said Rollin M. Squire, in pursuance and furtherance of said conspiracy, gave the letter of December 26, 1884, to Flynn, there is sufficient designation of the means by which the alleged conspiracy was to be effected and carried out.

Nor do I concur in the opinion expressed by the learned counsel for the defendant Flynn, that the agreement in question presents no evidence of a conspiracy, for the reason that there is no one act which the parties agreed to do together, and that Squire is to do nothing until after Flynn had acted. In substance and effect the offense charged by

the indictment, as I understand it, is an agreement or con-spiracy for the perversion or obstruction of justice and the due administration of the laws. To effect that object, several acts were to be done leading or tending to the general result, which is the crime charged, the prevention of the due administration of the laws by a complete surrender of all the powers of the office, after the same shall have been procured by the nomination of the mayor and confirmation by the aldermen.

The learned counsel for the defendant Squire also claims that as the conspiracy charged, if anything, is only a mis-demeanor, the agreement to commit it does not amount to a conspiracy under section 171 of the Penal Code, unless some act besides such agreement is done to effect the object thereof by one or more of the parties to such agreement. Is this a just criticism ? I think not, because it is alleged, as an overt act, that Squire, in pursuance and furtherance of the alleged conspiracy between himself and Flynn and Thompson and others, did make application to the said mayor to be nomi-nated, etc., and in pursuance thereof, did make, sign, and deliver to them the letter which is set forth in the indict-ment. These are overt acts done in pursuance of the alleged agreement. In other words, the conspiracy does not consist merely in the written paper, which is set forth in the count; the letter is one of the acts done in pursuance of the agreement; and is also evidence thereof. I am of the opinion, therefore, that the defendants are sufficiently in-formed of the accusation against them, intended to be charged by the indictment, and that it is sufficiently specific both as to the crime alleged, and as to the acts constituting it.

Nor do I think that the observations of the court in People v. Dumar, 106 N. Y. 502, contain anything mili-tating against this view. That case did not arise upon de-murrer, and it was admitted that the crime of grand larceny was well charged in the indictment, but the court said that the proof failed, because it tended to show that the property

was obtained by the defendant by false and fraudulent representations, and that, although by the Penal Code the obtaining of property by false and fraudulent representation constitutes larceny, the proof of such representations will not sustain an indictment for a common law larceny. See pp. 507, 508 and 511.

The district attorney relies upon the indictment found in the case of People v. Case and others for conspiracy, in which he claims that a similar demurrer was overruled by Justice DANIELS, and although the statement as to intent may have been more full in that indictment than in the one under consideration, it seems to me that the decision may fairly be regarded as a precedent in this case.

Finally, I am of the opinion that the remarks of Judge FINCH in the case of People v. Willet, 102 N. Y. 251, as to the purpose for which the Code of Criminal Procedure was passed, and as to the reformation which it was expected to effect, in reference to indictments, are peculiarly applicable to this case.

Several other questions were discussed by counsel on the argument, but enough has been said, I think, to show that the demurrer should not be sustained.

For these reasons the demurrers are overruled, and pleas must be filled in accordance with the stipulation made when leave to demur was granted.

---

NOTE.—As to the general subject of Conspiracy, see a note to People v. Sharp, 5 N. Y. Crim. Rep. 495.

What Constitutes a Conspiracy.—It is not essential to the formation of a conspiracy that there should be a formal agreement between the parties to do the act charged ; it is sufficient if the minds of the parties meet understandingly, so as to bring about an intelligent and deliberate agreement to do the acts and commit the crimes charged, although such agreement be not manifested by any formal words. McKee v. State, 111 Ind. 378.

Indictment for Conspiracy.—An indictment alleging a conspiracy, without alleging the execution of any act to carry it into

effect, is fatally defective.    United States *v.* Reichert, 32 *Fed. Rep.* 142.

Where an indictment alleges as part of the conspiracy that a false, fictitious, and fraudulent claim was to be presented to the United States surveyor-general for allowance and payment, it should also allege that such officer was authorized to allow and approve the claim, and for the omission of this allegation, the indictment is defective.    *Id.*

An indictment for conspiracy to commit an illegal act need not set out the means by which it was intended to be accomplished. Thomas *v.* People, 113 *Ill.* 531.

Under an indictment against county commissioners for fraudulently conspiring to obtain money under false pretenses from the county, evidence that one of defendants made out a bill for the sale of certain property of his own to the county, falsely purporting to be made and sworn to by another, it being unlawful for county commissioners to sell property to the county, was properly admitted, although no benefit from such transaction redounded to any of the other defendants.    Ochs *v.* People (Ill.), 16 *N. E. Rep.* 662.

An information found under section 9275, How. St. Mich., prohibiting conspiracies to obstruct the business of corporations, etc., need not allege specific acts done in pursuance of the conspiracy; and the fact that on the trial of such information the court treated it as charging the defendant with having done the acts which it charged him with conspiring to do, and admitted evidence of the doing of such acts, is not error, as it was competent evidence to show the conspiring as charged ; and the fact that, intending to show that the conspiracy was carried out, it operated to prove a crime greater than that charged, does not prevent conviction of the less offense.    CAMPBELL, Ch. J., dissenting.    People *v.* Petheran (Mich), 31 *N. W. Rep.* 188.

An indictment for conspiracy to deter a corporation from taking into its employ certain persons, need not allege in terms that the corporation desired or intended to employ the person whom it is alleged to have been prevented from employing, and whose employment the defendants are alleged to have conspired to prevent.    State *v.* Stewart, 59 Vt. 273.

If the indictment charges a conspiracy to do an act unlawful at common law, it is not necessary to allege the means by which the conspiracy was to be carried out ; and, if the indictment does allege means which are, by statute, made unlawful, such as threats or intimidation, it is enough to follow the language of the statute, and it

is not necessary to set out specifically the kind of threats or methods of intimidation made use of. *Id.*

If an act in its nature is unlawful, knowledge of its wrongful character is presumed, and it is unnecessary to aver in an indictment that the respondents had knowledge of its unlawful nature. *Id.*

An indictment under Rev. St. U. S. § 5440, relating to conspiracies to commit an offense against or to defraud the United States, followed by an act of one or more of the conspirators to effect the object of the conspiracy, charging an intent to defraud the United States by obtaining the dismissal of certain suits which by law might be brought by the United States to recover certain lands "alleged to have been fraudulently and unlawfully obtained" from the United States, does not charge a conspiracy to defraud the United States, since the use of the word "alleged" renders the fraud an open question. United States *v.* Milner, 36 *Fed. Rep.* 890.

An indictment charging a conspiracy with intent to defraud the United States by obtaining the dismissal or discontinuance of certain suits which by law might be brought by the United States, cannot be considered as charging a conspiracy to commit an offense against the United States,—to wit, bribery,—there being no specific hint of such an offense, except in the allegations of acts done to effect the object of the conspiracy. *Id.*

An allegation that defendants tendered an agreement to pay money to certain federal officials,—to wit, the officers of court of the United States acting under the authority of the government of the United States for the Southern division of the Northern district of Alabama,—is bad as a description of an act of one or more of the conspirators to effect the object of a conspiracy to defraud the United States under Rev. St. U. S. § 5440, being too indefinite to identify either the agreement or the tender, even were it clear whether the agreement was tendered to the officials or to somebody else. *Id.*

An allegation that defendants entered into an agreement which was corrupt, and with a bad intent, does not sufficiently describe the act done to effect the object of the conspiracy, since it fails to show whether the agreement was written or oral, active or passive, and leaves uncertain the matter and persons concerned. *Id.*

The indictment must allege the time and place of the act done to effect the object of the conspiracy, so as to identify the act, and show that it post-dated the conspiracy, and was not merely part of it. *Id.*

An indictment which charges a conspiracy by defendants to procure a complaint to be made against one of their number for keep-

ing a nuisance, and to cause him to be acquitted, but does not charge that they contemplated the use of any improper means to procure the acquittal, or that such defendant was not innocent in fact, does not charge a conspiracy to do an unlawful act, though a complaint against him before another justice for the same offense is then pending, on his appeal, in the superior court. Commonwealth *v.* McParland (Mass.), 19 *N. E. Rep.* 25.