## SUPREME COURT—APPELLATE DIVISION— FIRST DEPARTMENT.
### April 17, 1919.

THE PEOPLE ex rel. WILLIAM HAMLIN CHILDS v. DAVID H. KNOTT, Sheriff, and JOHN J. HANLEY, Warden, Defendants.

## THE PEOPLE OF THE STATE OF NEW YORK, Appellant

(187 App. Div. 604.)

(1.) INDICTMENT—DETERMINATION OF VALIDITY OF INDICTMENTS—HABEAS CORPUS, WHEN NOT REMEDY IN CRIMINAL ACTION FOR TESTING VALIDITY OF INDICTMENTS.

Ordinarily the validity of indictments should be tested by proper remedies in the criminal action prescribed by the Code of Criminal Procedure. But where on appeal from an order sustaining a writ of *habeas corpus* it appears that on deliberate consideration of objections thereto indictments have been declared void at Special Term, that a like opinion with respect to some of said indictments has been delivered by a justice of the Appellate Division, that those views even though they may be erroneous are likely to be followed by the trial court, and that all points relating to the validity of the indictments and the remedy have been argued and exhaustively considered by counsel in their briefs, the Appellate Division may consider the sufficiency of the indictments.

(2.) SAME—VIOLATION OF AND CONSPIRACY TO PREVENT COMPLIANCE WITH SECTION 546, ELECTION LAW.

Indictments against the treasurer of a political committee and others for conspiracy to prevent a compliance with and also for violation of section 546 of the Election Law and section 751 of the Penal Law in failing to file true statements of receipts and disbursements of money for campaign purposes examined and *held* sufficient.

(3) SAME—CONSPIRACY DEFINED.

A combination by several to effect an unlawful object or one injurious to the public constitutes an indictable offense even though the act to be accomplished cannot constitute a crime if performed by a single individual acting alone.

(4.) SAME.

The willful failure of the treasurer of a political committee to comply with the requirements of section 546 of the Election Law is a misdemeanor.

(5.) SAME—INDICTMENT NEED NOT SPECIFY STATUTE UNDER WHICH FOUND.

Indictments need not specify the statutes under which they are found and such a specification need not be indorsed thereon.

(6.) SAME—SECTION 546 NOT EXCLUSIVE.

The remedy under the Election Law for securing compliance with section 546 thereof in respect to filing proper statements is not exclusive.

(7.) SAME—SUBDIVISION 12 OF SECTION 751 OF PENAL LAW APPLIES TO GENERAL ELECTION.

The provision of subdivision 12 of section 751 of the Penal Law providing that if any person being an officer " of a political committee or a convention, willfully omits, refuses or neglects to do any act required by the Election Law or otherwise by law, or violates any of the provisions of the Election Law," he shall be guilty of a misdemeanor, applies to general elections.

(8.) SAME.

Under the indictments in question the relator should be left to his remedies in the criminal action and is not entitled to have the validity of the indictments tested by *habeas corpus.*

(9.) SAME.

*Habeas corpus* is not a remedy in a criminal action or proceeding or in one in the nature thereof; but is a civil, special proceeding to inquire into the cause of restraint or detention and to enforce a civil right to be released from constraint, custody or confinement, whether in a civil or criminal action or proceeding or otherwise, which is unlawful.

(10.) SAME—PRESUMPTION OF VALIDITY OF INDICTMENT.

There is and should be a presumption in favor of the validity of indictments duly presented under the advice of the court and with the assistance of the prosecuting officer.

(11.) HABEAS CORPUS, WHEN NOT REMEDY IN CRIMINAL ACTION FOR TESTING VALIDITY OF INDICTMENTS.

*Habeas corpus* is not a remedy for testing the sufficiency of an indictment or of the evidence upon which it was found or for testing the right to detain the accused thereunder, unless there be a total lack of jurisdiction to hold or to bring the defendant to trial thereon.

PAGE, J., dissented, with opinion.

APPEAL by the People of the State of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of

New York on the 9th day of October, 1918, sustaining a writ of habeas corpus and discharging the relator from custody.

*Robert S. Johnstone* of counsel (*Robert D. Petty* and *Felix C. Benvenga* with him on the brief; *Edward Swann, District Attorney*), for the appellant.

*John B. Stanchfield* of counsel (*Isidor J. Kresel* and *J. Arthur Leve* with him on the brief; *Stanchfield & Levy* and *Isidor J. Kresel, Attorneys*), for the respondent.

LAUGHLIN, J.:

The petition of the relator shows that at an Extraordinary Term of the Supreme Court held in and for the county of New York a grand jury presented three indictments, copies of which are thereto annexed, against him on the 8th day of May, 1918, upon which he was on that day arraigned and admitted to bail in the sum of $1,000; that he had been surrendered by his surety to the custody of the sheriff of the county and warden of the city prison and was by them unlawfully and without due process of law restrained of his liberty in violation of the State and Federal Constitutions in that the indictments are null and void on the ground that they were found for acts in violation of the Election Law of the State of New York, the commission of which neither constituted a crime nor a violation of any of the provisions of the Penal Law of said State and that, therefore, the grand jury had no jurisdiction to inquire into the matters set forth in the indictments or to present an indictment based thereon. The return of the acting warden shows that he held the relator under an order of said court, made on the surrender by the surety, committing him to await trial under all of said indictments, one of which the order shows is for conspiracy and that the other two are for violations of section 546 of the Election Law and section 751 of the Penal

Law. The relator traversed the return alleging the invalidity of the indictments for the reasons assigned in the petition and the invalidity of the indictment for conspiracy on the further grounds that it charges a conspiracy to violate section 546 of the Election Law without showing a violation thereof, and that the acts charged as constituting the violation show a compliance with the requirements of said section.

The learned court at Special Term was of opinion that all the indictments were invalid and on that theory sustained the writ. (104 Misc. Rep. 378.) I am of opinion that the learned justice who presided at the Special Term, in sustaining the writ, erred, for the reasons that the indictments were valid and if they were not, their validity should be tested by the appropriate remedies in the criminal action prescribed by the Code of Criminal Procedure. Ordinarily it would suffice to place the decision on the latter ground; and that course would be pursued here were it not for the fact that the indictments, on deliberate consideration of the objections thereto, have been declared void at Special Term, and a like opinion with respect to the indictments, other than the one for conspiracy, has been delivered by one of the members of this court (People ex rel. Childs v. Extraordinary Trial Term, 184 App. Div. 849), and those views, even though they be erroneous, would likely be followed by the trial court, and for the further fact that all points relating to the validity of the indictments and the remedy have been ably argued by counsel and exhaustively considered in their points. In the circumstances, therefore, we deem it proper to decide both points.

At the time the acts charged in the indictment are alleged to have been committed the provisions of the Election Law applicable thereto were embraced in article 16 thereof (as renum. from art. 20 by Laws of 1913, chap. 800), entitled " Corrupt Practices," which was formerly article 9 and was added to the former Election Law (Gen. Laws, chap. 6; Laws
30

of 1896, chap. 909) by chapter 502 of the Laws of 1906 (as amd. by Laws of 1907, chap. 596). Section 540 of the present Election Law (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd. by Laws of 1910, chap. 429) declared that any committee or combination of three or more persons co-operating, among other things, to aid or promote the success or defeat of a political party or principle or to aid or take part in the election or defeat of a candidate for public office should be deemed a " political committee." Section 543 required that every political committee should have a treasurer who should cause to be filed in the office of the Secretary of State a statement giving his name and address and should cause him to keep detailed accounts of all moneys or its equivalent received by or promised to the committee and of expenditures and disbursements made by the committee or any of its officers or members or by any one acting under its authority or in its behalf. Section 544 (as amd. by Laws of 1910, chap. 429) imposed upon officers, members and agents of such committees the duty of reporting a detailed account of contributions and promises therefor and of disbursements with vouchers therefor to the treasurer; and section 545 required signed vouchers stating the particulars of disbursements exceeding five dollars to any person. If a political committee or any officer, member or agent thereof received, expended or disbursed any money or its equivalent, or incurred liability to pay money or its equivalent in connection with any election, the duty was imposed on the treasurer by sections 546 and 548 of the Election Law (as amd. by Laws of 1910, chaps. 429, 438) of filing with the Secretary of State a statement setting forth all receipts, expenditures, disbursements and liabilities of such committee and of every officer, member and other person in its behalf, which statement should include the amount received and the name of the person or committee from whom received and the date of its receipt and the amount of every expenditure or disbursement and the name of

the person or committee to whom it was made and the date thereof and, unless the expenditure or disbursement shall have been made to another political committee, it should state clearly the purpose of such expenditure or disbursement; but expenditures and disbursements in sums less than five dollars were not required to be specifically accounted for by separate items excepting in the case of a payment made for account of or to political workers, watchers or messengers.

By the conspiracy indictment the relator and William Sulzer and Josiah T. Newcomb are charged jointly, among other things, with having agreed, combined and confederated together and with others to commit a crime to injure public morals and to obstruct, defeat and pervert the administration of the law by inducing and procuring one Clarke, who was the treasurer of the city publicity committee, which was a political committee, and a sub-committee of another political committee known as the fusion committee, to omit, refuse and neglect to file a full and true statement with respect to disbursements by and in behalf of the committee of which he was treasurer in promoting the candidacy of Mayor Mitchel for re-election as mayor of the city of New York at the general election held on the 6th day of November, 1917, as was required of said Clarke by said section 546 of the Election Law. It is charged in the indictment, in due form and sufficiently, that the conspiracy was entered into on the 16th day of October, 1917; that Childs was the manager and an officer, member and agent of the fusion committee and for it managed, supervised and controlled said sub-committee and the acts and conduct of its officers and treasurer; that Newcomb was also an agent of the fusion committee; that said committee received and disbursed money and incurred liability for the payment of money in connection with said election; that Childs and Newcomb as such agents of the fusion committee and in behalf of said sub-committee employed Sulzer as a speaker in connection with said election

for and on behalf of said sub-committee and for it and on its behalf paid him for such services $1,700 on said 16th day of October, $1,700 on the 23d of October and $1,600 on the 30th of October, 1917, and that in furtherance of the conspiracy said Clarke as such treasurer was unlawfully induced by the defendants to omit from the statement he filed with the Secretary of State on November 27, 1917, purporting to be a compliance with said section 546, the items, dates and purposes of said disbursements and the name of Sulzer to whom the money was paid; that the relator was reimbursed for said items by a check for $11,500 which he induced one Loper, the assistant treasurer of the fusion committee, to draw to his order on November 22, 1917, and upon the stub of which he caused said Loper to make an entry as follows: " Nov. 22 — Wm. H. Childs 11500.00 — rental of Halls, salaries & expenses of Speakers, auto hire, etc., for various meetings; " that on the 27th day of November, 1917, the relator requested and directed said Loper, over whom, as manager of the fusion committee, he had charge, to cause and procure said entry to be entered as one of the items in the statement to be filed by (Clarke as such treasurer and to cause and procure the statement containing that entry to be presented to said Clarke as such treasurer, who filed the same as aforesaid without further particulars with respect to said disbursements to Sulzer.

These and other allegations of fact, which need not be stated more fully, contained in the indictment sufficiently charged the relator and his codefendants with a conspiracy to prevent a compliance with the requirements of said section 546 of the Election Law by Clarke, as such treasurer, which was successfully consummated by the filing of the statement by him which failed and omitted to specify these items of disbursements to Sulzer. The Legislature had defined the purposes for which money might lawfully be expended in connection with an election and it enacted the provisions, to which reference has been

made, with a view to insuring compliance therewith and to discouraging undue expenditures for election purposes by securing the publicity with respect to such disbursements that would be afforded by full and true itemized statements as required by section 546. The argument in behalf of the relator to the effect that the statement filed constituted a compliance with the requirements of the law is so clearly untenable that it requires no further consideration.

It is, however, further contended in his behalf that even though the treasurer did not fully or properly perform the duty devolving upon him under said section 546, his failure to comply therewith is not declared by the Election Law or by any other statute to be a crime and that, therefore, a conspiracy by which he was induced to file a false or incomplete statement cannot constitute the crime of conspiracy. For the purpose of deciding whether the indictment for conspiracy is valid I shall assume, without expressing an opinion on the point, that the Legislature has omitted to declare a failure on the part of the treasurer of the political committee to comply with said section 546 to be a crime. It is perfectly clear that the act of the treasurer in filing a false or incomplete statement was *unlawful* in that it was not a compliance with the duty expressly enjoined by law. It is, therefore, sufficiently charged that the defendants conspired either to induce him to perform an unlawful act or to fail to perform a duty expressly enjoined upon him by law. Even under the common law a combination by several to effect an unlawful object or one injurious to the public constituted an indictable offense even though the act to be accomplished would not constitute a crime if performed by a single individual acting alone. (3 Chitty Crim. Law, 1139, 1140; Archbold Crim. Pl. & Pr. [24th ed.] 1410, 1411; 2 Bishop New Crim. Law, §§ 178, 180; State v. Burnham, 15 N. H. 396, 401, 402; Callan v. Wilson, 127 U. S. 540, 555; United States v. Lancaster, 44 Fed. Rep. 896, 899; Common-

wealth v. Waterman, 122 Mass. 43, 57; Smith v. People, 25 Ill.
1.) That such is the law in this jurisdiction quite clearly ap-
pears from the provisions of section 580 of the Penal Law,
which defines the crime of conspiracy. By subdivision 1 of that
section, if two or more person conspire to commit a crime they
are guilty of the crime of conspiracy. If the conspiracy were
in all cases limited to acts constituting a crime it would not have
been necessary for the Legislature to have gone further; but it
enacted in that section five other subdivisions defining other
acts which constitute the crime of conspiracy. Subdivision 6
declares that if two or more persons conspire to commit, among
other things, any act injurious to public morals " or for the
perversion or obstruction of justice, or of the due administra-
tion of the laws," each of them is guilty of a misdemeanor.
Section 583 of the Penal Law limits these general provisions
by providing that unless the conspiracy be to commit a felony
upon the person of another or to commit arson or burglary it
shall not constitute *the crime* of conspiracy unless, in addition
to the agreement, some act be done to effect the object of the
agreement by one or more of the parties. Here overt acts in
furtherance of the agreement are sufficiently set forth and for
the most part they are charged to have been performed by the
relator; and, therefore, we have the crime of conspiracy com-
pletely charged provided the facts alleged show an agreement
on the part of the defendants to pervert or obstruct the due
administration of the law. It will be observed that the Legis-
lature has differentiated between a conspiracy for the per-
version or obstruction of justice and one for the perversion or
obstruction of the due administration of the law. It would
seem, therefore, that no argument is required to show that the
latter clause was aimed at conspiracies to prevent the per-
formance of duties enjoined by law; and such is the construc-
tion that has been given to these provisions and to similar
statutory provisions in other jurisdictions. (People v. Squire,

20 Abb. N. C. 368; Drew v. Thaw, 235 U. S. 432; Moschell v. State, 53 N. J. L. 498; 54 id. 390; State v. Nugent, 77 id. 84; State v. McDevitt, 84 id. 11; 85 id. 731; 1 Whart. Crim. Pr. [10th ed.] § 536, p. 666.) It is quite clear, I think, that the indictment for conspiracy is valid and that the relator is properly held thereunder.

The other indictments are designated Exhibits "B" and "C." They present the point as to whether the willful failure of a treasurer of a political committee to comply with the requirements of said section 546 is a misdemeanor, for they are based on said Clarke's failure so to comply, unlawfully induced, aided and abetted by the defendants, which would make them principals. (Penal Law, §§ 2, 27, 1936; People v. McKane, 143 N. Y. 455, 464, 9 N. Y. Crim. 377.) Exhibit "B" was also a joint indictment against the same defendants in two counts for the crime of "wilfully omitting and neglecting to include in a statement filed by the treasurer of a political committee setting forth its receipts, expenditures, disbursements and liabilities, the amount of an expenditure and disbursement in excess of five dollars, the name of the person to whom such expenditure and disbursement was made, a clear statement of the purpose of such expenditure and disbursement and the date thereof." The first count sufficiently charges that the crime was committed by Clarke, if it be a crime willfully to fail to comply with the provisions of said section 546, in that he willfully failed and omitted to incorporate in the statement, so filed by him, the said items of money disbursed by the political committee of which he was treasurer and by the relator and Newcomb as its agents to Sulzer, and the dates, amounts and purposes thereof and the name of Sulzer as the person to whom the money was paid; and sufficiently charges the relator and his codefendants with having, with intent to procure the violation of said statute, unlawfully counselled, commanded and induced Clarke as such treasurer so to omit and fail to comply with said section 546.

The second count charges the relator and his codefendants with having committed the same crime with respect to the omission of those items from the statement filed by Clarke as such treasurer, and charges that, with intent to procure the violation of the statute, they unlawfully counselled and commanded and induced Clarke to include the payments so made to Sulzer in said general item, hereinbefore quoted, in the statement so filed by him. Exhibit " C," in two counts, similar to those contained in Exhibit " B," charges the relator and his codefendants with a like crime committed in like manner with respect to inducing and procuring the omission from the statement by Clarke as such treasurer. of two payments aggregating $6,500 made for the same political committee by the same persons as its agents to one Misha Applebaum for like services. It thus appears that the payments to Sulzer and Applebaum aggregated the $11,500 specified in said general item in the statement so filed by Clarke as such treasurer. An indorsement on these indictments indicates that they are based on said section 546 of the Election Law and section 751 of the Penal Law. No statute has been cited and I have found none which either requires that the indictment shall specify the statute under which it is found, or that such a specification shall be indorsed thereon. The only requirement appears to be that the indictment must contain the title of the action, specifying the court to which it is presented and the names of the parties and a plain and concise statement of the acts constituting the crime without unnecessary repetition. (Code Crim. Pro., § 275.) The only other statute upon which the People seek to sustain the indictment is section 2 of the Penal Law, which describes a crime as an act or omission forbidden by law and punishable upon conviction as therein specified.

It is, however, contended by counsel for the relator that the Legislature intended to provide in the Election Law itself an exclusive remedy for securing compliance therewith in respect

to filing proper statements. It may be observed at the outset that it is not reasonable to suppose that the Legislature after having provided so carefully and explicitly what the duty of such a treasurer is with respect to filing a statement, intended to leave it discretionary with him, in a sense, in the first instance whether or not to comply therewith, and intended that the only risk he incurs, by wholly omitting to comply therewith, or by knowingly filing a false or incomplete statement, is liability to be compelled to perform his duty, and to fine and punishment as therein prescribed in the event that an application should be made to the Supreme Court or to a justice thereof as authorized by section 550 *et seq.* of the Election Law for compelling compliance with such duty " by order in proceedings for contempt." Such a proceeding was not instituted against said treasurer, and if one had been so instituted it is quite clear that he could have been punished as for a contempt only in the event that he failed to comply with an order duly made therein, and not for his original failure to perform his duty as required by said section 546. It would be reasonable to impute to the Legislature an intent to subject one who failed to perform his duty under said section 546 to prosecution as for a crime, but since the original omission to file or act of filing would have no relation to the administration of justice it would be unreasonable to infer that the Legislature intended to attempt to provide that the original omission or act should be punishable as for a contempt. The Legislature undertook to provide in section 560 of the Election Law not only for the punishment, as for a contempt, of a person proceeded against who fails to comply with an order of the court or justice, but also that if the original failure to comply with the law was through willful intent on the part of the person proceeded against, he should " be liable to a fine not exceeding one thousand dollars, or imprisonment for not more than one year, or both." The statute, however, does not purport expressly to authorize the court or justice to impose the fine or

imprisonment in that proceeding; and if it had, it would be unconstitutional in any event, for the imprisonment might be in a State prison (Penal Law, §. 2182; People v. Lyon, 99 N. Y. 210), and, therefore, the crime would be a felony (Penal Law, § 2) which could be prosecuted only by indictment. (Const. of New York, art. 1, § 6; People v. McDonald, 26 Hun 156; People v. Van Steenburgh, 1 Park. Cr. Rep. 39; 45; Mairs v. B. & O. R. R. Co., 73 App. Div. 265, 273; affd., 175 N. Y. 409.)

In so far as the argument in behalf of the relator in support of his contention that the Election Law was intended to provide an exclusive remedy is predicated on the statutory provisions for imposing performance of the duty with respect to filing a proper statement, I think it is without force, for the Legislature might have intended that the failure to perform the duty originally should constitute a crime, and might have deemed it advisable and necessary also to provide a method for enforcing performance of the duty. There is, however, some force in this argument based on the provisions of the Election Law, to which reference has been made, which would be unconstitutional if intended to authorize the infliction of the punishment on conviction by the court or justice. It will be observed that those provisions apply only to a person proceeded against, as therein provided, for a failure to perform his duty. I am of opinion that it would not be reasonable to hold that by the mere insertion of those provisions relating only to the particular offender against whom a summary proceeding is instituted to compel the filing of a proper statement, the Legislature intended that all others who deliberately and willfully omit and fail to perform their statutory duty should be immune from any prosecution.. It would be more reasonable to infer that the Legislature supposed that other offenders could be prosecuted under other statutes, but that the particular offenders thus brought before the court or justice should be punished in the summary proceeding, if pos-

-sible, for the wholesome effect such a summary conviction would have. It is quite clear that the Legislature deemed that such a willful failure to perform the duty would be a crime for it did not therein deem it necessary to declare it to be a crime. It, however, attempted to prescribe punishment greater than is imposed for misdemeanors. Since the Legislature deemed the offense so grave, it cannot be that it contemplated that such offenders could only be brought to justice provided a proceeding should be instituted to compel the filing of a proper return as therein provided. If the Legislature intended such a proceeding as an exclusive remedy I think it would have limited the scope of the proceeding to enforcing performance of the duty. Why should the criminality of the act or omission be made to depend upon whether such a summary proceeding is instituted to compel performance of the statutory duty? If the statute were so construed the omission or act *would become criminal only* in the event such a summary proceeding should be instituted against the offender to compel performance of his duty and would not depend upon his unlawful act but upon whether others should institute such a summary proceeding.

In this connection it may be observed that one contention made in behalf of the People, namely, to the effect that the provisions of said section 560 of the Election Law, which I deem unconstitutional, were intended to prescribe the penalty for any original failure to file a proper statement and that such penalty would be imposed after conviction under said section 546 of the Election Law and section 751, subdivision 12, of the Penal Law, could not in any event be sustained, for the reason that the provisions of said section 560 subjecting the offender to liability for a fine or imprisonment or both, are expressly limited to those proceeded against thereunder for a failure to file a proper statement. If the legislative scheme prescribed in said section 560 for punishing such offenders for a willful failure to file a proper statement in the first instance

were valid and if such failure would constitute a misdemeanor by virtue of section 751, subdivision 12, of the Penal Law, the persons, though proceeded against under provisions of the Election Law, would be subjected to a fine of $1,000 or imprisonment of one year, which might be in a State prison (Penal Law, § 2182), or both, while other persons not so proceeded against but guilty of like crimes would be punishable, upon conviction, under section 1937 of the Penal Law, which limits the punishment to imprisonment for not more than one year in a county jail or penitentiary, or a fine of not more than $500, or both. I am of opinion, therefore, that the Legislature supposed it was competent for it to authorize the court of justice before whom the summary proceeding was instituted to convict and punish the offender severely and summarily without further trial; and that, for the reason already assigned, those provisions are unconstitutional and void and that such offenders, like all others guilty of like offenses, are to be prosecuted under any other law, if any there be, applicable to the offense and declaring it to be a crime.

The principal argument in behalf of the People is that by the provisions of subdivision 12 of section 751 of the Penal Law the acts charged in these indictments are declared to be a misdemeanor. That subdivision, so far as material here, provides that if any person being an officer " of a political committee or a convention, wilfully omits, refuses or neglects to do any act required by the Election Law or otherwise by law, or violates any of the provisions of the Election Law," he shall be guilty of a misdemeanor. The other provisions of that subdivision clearly relate only to primary elections and conventions; and it is provided in section 750 of the Penal Law, which is in the same article 74, that the words " election " or " town meeting " as used in any of the sections of that article, excepting section 751, shall be deemed to apply to and include all general and special elections, municipal elections, town meetings, and primary elec-

tions and conventions, and to proceedings for the nomination of cadidates by petition under the Election Law. The relator contends that since the acts charged in the indictment relate only to a general election there could be no violation of the provisions of subdivision 12 of section 751 of the Penal Law for the reason that those provisions do not relate to a general election. Those respective contentions present a question which is not free from doubt. The heading of section 751 is as follows: "Misdemeanors at, or in connection with, political caucuses, primary elections, enrollment in political parties, committees, and conventions." This heading does not indicate that the provisions of that section were intended to apply to general elections and it is quite clear that all of the provisions thereof, with the possible exception of those quoted, apply only to primary elections, caucuses and conventions. The general language quoted from subdivision 12 is sufficiently broad to embrace general elections, but counsel for the relator contends, and there is force in the contention, that the general words there employed should be limited by the rule of *ejusdem generis* to primary elections and conventions and to the acts of members of political committees in connection therewith. The learned assistant district attorney contends that the exception inserted in section 750 of the Penal Law, to which reference has been made, was not intended to limit the application of section 751, but to avoid extending *all* of the provisions of section 751 to general elections, to which most of them clearly were not intended to apply, and that but for the exception it might be claimed that section 750 made them applicable to such elections. It appears that section 751 was formerly section 41 of the Penal Code and that subdivision 12 thereof was added by chapter 197 of the Laws of 1898, and was amended by chapter 530 of the Laws of 1899 by inserting for the first time the words "or any officer of a political committee or a convention" which are now found in subdivision 12 of section 751. Subdivision 12 of said section

41 of the Penal Code as so amended was expressly limited to violations of the Primàry Election Law, but the word " primary," which so limited said subdivision, was omitted when by chapter 88 of the Laws of 1909 (Consol. Laws, chap. 40) section 751 became a law on the 12th of March, 1909. The People claim that the effect of the re-enactment of said subdivision 12 in section 751 with the word " primary " omitted, indicates a legislative intent to remove the limitation and to extend the provisions of the subdivision generally so as to embrace all elections. But the purpose of this omission is explained by a note to the section by the Board of Statutory Consolidation to the effect that it was omitted for the reason that in the Election Law (Consol. Laws, chap. 17; Laws of 1909, chap. 22), enacted at the same session and prior to the enactment of section 751 of the Penal Law, the former Primary Election Law (Laws of 1898, chap. 179, as amd. by Laws of 1899, chap. 473, and subsequent statutes) was consolidated with the General Election Law, and that by this omission it was not intended to change the effect of the provisions of subdivision 12 of said section 41 of the Penal Code as it theretofore existed. In the history of the legislation, therefore, it is difficult to discover legislative intent to extend the application of said subdivision 12 to general elections. The People, however, claim that the effect of the omission of the word " primary " renders the language employed so clear that it does apply to general elections even though the Board of Statutory Consolidation did not so intend. But the validity of the indictments does not necessarily depend on the effect of such omission of the word " primary." The People also claim that the phraseology " or otherwise by law " in said subdivision 12 is so general that it necessarily includes any willful omission, refusal or neglect on the part of an officer of a political committee to perform an act required by law and particularly by any law relating to elections, which is a kindred subject, and they rely on the general rule that all the words of

a statute should be given effect. (See People v. Luhrs, 195 N. Y. 377, 381; People v. Abeel, 182 id. 415, 420.) That phraseology was likewise taken from subdivision 12 of section 41 of the Penal Code and it is claimed that as there used it necessarily extended the application of the subdivision beyond the Primary Election Law. The phraseology then was " required by the Primary Election Law or otherwise by law." There is much force in this contention. Counsel for the relator says these words should be construed as limited to other laws relating to primary elections and conventions. I think not. When the Legislature saw fit to extend its supervision over such committees I think it is not unreasonable to construe these provisions as authorizing the prosecution of such committees and officers for failure to perform their duties. That phraseology was in subdivision 12 of section 41 of the Penal Code when those provisions of the Election Law were first enacted, as already stated, in 1906, and if the phraseology was not limited to primary elections it is quite clear that it was broad enough to apply to these provisions of the Election Law when subsequently enacted. In view of the statutory rule of construction prescribed in section 21 of the Penal Law, by which all of the provisions of the Penal Law must be construed according to the fair import of their terms, to promote justice and effect the objects of the law, said subdivision 12 of section 751 should, I think, receive a construction sufficiently broad to make the acts charged in the indictment a crime.

I am of opinion, however, that the relator should be left to his remedies in the criminal action in which he is held under indictment duly found, and that he was not entitled to have the validity of the indictments tested by habeas corpus.

The theory upon which penal laws have been strictly construed is that such laws should be so plainly written that every one may be able to understand what is required or forbidden or prohibited thereby, so that in doing the forbidden or pro-

hibited act it might reasonably be presumed that the wrongdoer would know that he was violating the law. The facts charged in these indictments show clearly that the defendants deliberately combined and planned to bring about the violation of provisions of said section 546 of Election Law by Clarke as such treasurer by inducing him to file this false and incomplete statement. If the facts are as charged there can be no doubt that the defendants knew full well that what they set out to accomplish was in violation of the law. It seems to me, therefore, that the acts charged in the indictments were forbidden by law or prohibited by statute.

I am of opinion, however, that the relator should be left to his remedies in the criminal action in which he is held under indictment duly found, and that he was not entitled to have the validity of the indictments tested by habeas corpus.

Habeas corpus is not a remedy in a criminal action or proceeding or in one in the nature thereof; but is a civil special proceeding to inquire into the cause of restraint or detention and to enforce a civil right to be released from restraint, custody or confinement, whether in a civil or criminal action or proceeding or otherwise, which is unlawful. (People ex rel. Curtis v. Kidney, 225 N. Y. 299.) I know of no limitation on the power of the Legislature to confer upon courts and judicial officers authority to entertain habeas corpus proceedings. It is a common-law remedy preserved by the Constitution and vested in the Supreme Court by virtue of its general original jurisdiction. (People ex rel. Tweed v. Liscomb, 60 N. Y. 559.) It has been regulated by the Legislature and authority to entertain it has been conferred not only on the Supreme Court and the justices thereof and the Appellate Division, but upon all officers authorized to perform the duties of a justice of the Supreme Court at chambers which includes all county judges (Code Civ. Pro., §§ 241, 2017), and formerly included certain recorders. (People ex rel. Heilbronner v. Hoster, 14

Abb. Pr. [N. S.] 414.) There is no distinction between the authority of one court or the other or the officers authorized to grant the writ or decide the questions arising thereon. Section 293 of the Code of Criminal Procedure authorizes certain amendments to indictments; and where in the prosecution of an indictment it is found to be insufficient either on motion, on demurrer or on the trial the defendant may be held and the matter may be resubmitted to a grand jury if the court is of opinion that a valid indictment may be found with respect to the acts insufficiently charged. (Code Crim. Pro., §§ 317–327, 408.) Habeas corpus is such an ancient writ that, in the course of time, in applying and restating the rules of law applicable thereto some confusion and uncertainty have arisen.

The right of a magistrate to hold one accused of crime to answer in another court depends upon whether there is *any* competent evidence tending to show his guilt and, therefore, he may have that point decided on habeas corpus. (People ex rel. Perkins v. Moss, 113 App. Div. 329, affd., 187 N. Y. 410; People ex rel. Howey v. Warden, etc., 207 id. 354.) It also lies to test the validity of a conviction on a plea of guilty, depending on whether a crime is charged, but there, I think, the defendant after pleading guilty would have no other remedy for it does not ordinarily lie to test the validity of a conviction. (People v. Hislop, 77 N. Y. 331; People ex rel. Tweed v. Liscomb, *supra.*) It also lies to test the validity of a sentence under which the defendant is held, but there, also, I believe, there would be no other remedy. (People ex rel. Tweed v. Liscomb, *supra.*) From these considerations we would expect, at least, to find that the court or officer authorized to entertain the proceeding should neither be required nor permitted to sustain the writ after indictment duly found in a court of competent jurisdiction unless it is *perfectly clear* that no crime is charged in whole or in part upon which the relator may be convicted under the indictment found or under any indictment

that may be found on a resubmission, for otherwise the validity of all indictments might be tested before officers other than members of the court in which they are found and the defendants might be discharged, whereas if the indictments were left to be tested in the regular methods prescribed by criminal procedure they might be perfected on resubmission. We find, however, that the authority to entertain the proceeding in such case *is even more limited,* and very properly so, in order to prevent the withdrawal and usurpation of the jurisdiction of the court in which the indictment is pending and which is competent to decide, according to the prescribed procedure, all questions ordinarily arising with respect to the validity of indictments. It is the duty of the court to charge the grand jury originally with respect to their duties and to advise them when requested. (Code Crim. Pro., §§ 248, 262.) When the community is concerned over alleged violations of laws, the courts ordinarily in charging grand juries draw their attention thereto, and instruct them with respect to violations constituting a crime. The grand jury that found the indictment may have been so instructed or advised that violation of the provisions of the Election Law in question would constitute a misdemeanor and that it was their duty to present indictments therefor if evidence thereof should be presented to them. If the writ would lie in such case the court or officer in entertaining it would necessarily be collaterally reviewing such instructions. It is the duty of the district attorney to present evidence before the grand jury and to advise them with respect to what constituted indictable crimes. (Code Crim. Pro., §§ 263, 264.)

There is and should be a presumption in favor of the validity of indictments duly presented under the advice of the court and with the assistance of the prosecuting officer. As might be expected, therefore, we find that habeas corpus is not a remedy for testing the sufficiency of an indictment or of the evidence upon which it was found or for testing the right to detain the

accused thereunder unless there be a total lack of jurisdiction to hold or to bring the defendant to trial thereon. (People ex rel. Moore v. Warden of City Prison, 150 App. Div. 644, 27 N. Y. Crim. 477; People ex rel. Tweed v. Liscomb, *supra;* People ex rel. Scharff v. Frost, 198 N. Y. 110; People ex rel. Stabile v. Warden, etc., 202 id. 138, 26 N. Y. Crim. 108; People ex rel. Bullock v. Hayes, 166 App. Div. 507; affd., 215 N. Y. 172, 33 N. Y. Crim. 186; People ex rel. Perry v. Gillette, 200 id. 275, 25 N. Y. Crim. 303; People ex rel. Conway v. Warden of 2d District Prison, 180 App. Div. 336; Matter of Hacker, 73 Fed. Rep. 464.) The rule as stated and administered by the Federal courts is that the writ is not intended as a substitute for the functions of the trial court, either as to disputed questions of fact *or law,* and that a defendant will not be permitted thereby to anticipate the regular course of proceedings by alleging want of jurisdiction on the ground of the invalidity of the statute under which he is held or that the indictment does not state a crime or one of which the court has jurisdiction; that there is no unlawful restraint of liberty where the defendant is held under a commitment legally sufficient under an order of a court of competent jurisdiction, and that, with the exception of cases involving a conflict between State and Federal jurisdiction, treaty rights and obligations, double jeopardy or a sentence *in excess of jurisdiction* or violation in a prosecution in a State court of a right guaranteed by the Federal Constitution, in which case he will ordinarily be required first to exhaust his remedy in the State courts, the writ will not lie when the defendant is held under indictment or under a warrant for his removal to another jurisdiction and he will be left to his remedy in the criminal prosecution by motion to quash the writ or by review of his conviction or as may be otherwise provided. (Henry v. Henkel, 235 U. S. 219, 228, 229; Ex parte Watkins, 3 Pet. 193; Lamar v. United States, 240 U. S. 60, 65; Ex parte Lange, 18 Wall. 163; Hyde v. Shine, 199 U. S. 62, 84; Matter

of Loney, 134 id. 372; Riggins v. United States, 199 id. 547; Matter of Lancaster, 137 id. 393; Ex parte Royall, 117 id. 241; New York v. Eno, 155 id. 89; Drew v. Thaw, 235 id. 432; Johnson v. Hoy, 227 id. 245.)

The Federal rule has been cited, approved and followed frequently by our courts. (People ex rel. Collins v. McLaughlin, 194 N. Y. 556, 23 N. Y. Crim. 92; People ex rel. Scharff v. Frost, *supra;* People ex rel. Bullock v. Hayes, *supra;* People ex rel. Stabile v. Warden, etc., *supra.*)

The defendant, therefore, is not unlawfully restrained of his liberty under any of these indictments. It follows that the order should be reversed and writ dismissed and the relator remanded to custody.

SHEARN and MERRELL, JJ., concurred; PAGE, J., dissented.

CLARKE, P. J.:

While I do not desire to dissent from any portion of Mr. Justice LAUGHLIN's opinion, as I have always entertained the opinion that habeas corpus is not to be used as a writ of error, that an indictment found by a duly constituted grand jury, returned to a court of competent jurisdiction, imports verity, and cannot be so tested for sufficiency of statement or proof, other remedies being provided by law, I do not think the indictments are properly before us, and so concur upon the last ground stated by him.

PAGE, J. (dissenting):

I am of opinion that the result of the decision in this case is to restrict and unduly limit the operation of the writ of habeas corpus, the great object of which is the liberation of those who may be imprisoned without sufficient cause. Whatever may be the reason assigned for the detention, no citizen can be deprived of his liberty without due process of law. To hold

that the relator is not entitled to have the validity of an indictment tested by habeas corpus; that it is a sufficient return, which precludes the court from inquiry as to the legality of the confinement, that the person is confined by virtue of an indictment of the grand jury duly found, is to revive the decisions of the English judges, who held that it was a sufficient return to a writ, precluding the court from further inquiry as to the cause thereof, that the person was detained by warrant of the Privy Council or the King's command. The object of all legislation since that day has been to broaden and not to limit the office of this writ. In my opinion, if a person is confined for an act which does not constitute any offense known to the law, he may be discharged, whether he be held by warrant of a committing magistrate or after indictment by the grand jury. In this connection I wish to make plain the distinction that exists between an indictment where the crime attempted to be alleged is in fact a crime although insufficiently set forth, and one in which facts are set forth which constitute no offense known to the law. In the former the sufficiency of the indictment must be tested by demurrer, or other appropriate process in the criminal proceeding. In the latter, a writ of habeas corpus may properly be invoked, for the person is deprived of his liberty without due process of law, and his confinement may not be continued to abide the slow process of demurrer, and possible appeal. As I stated in People ex rel. Childs v. Extraordinary Trial Term (184 App. Div. 829, 837) in regard to these same indictments: " The indictment sets out that as a misdemeanor which the law does not recognize as a criminal offense. It calls for a prosecution in respect to a matter as to which no court has any authority to entertain a prosecution. The court, therefore, has no jurisdiction to determine the matter before it." It seemed to me that this ground for the issuance of the writ of prohibition was stronger than that stated in the opinion with which a majority of the court concurred. The other members

of the court held then, as they do in this case, that the only way this objection could be taken was "by demurrer, at the trial under the plea of not guilty, and in arrest of judgment," and from an adverse decision by appeal to the Appellate Division and the Court of Appeals. The decision was, therefore, limited to prohibiting the Extraordinary Trial Term from proceeding with the case.

This court has, therefore, held that where it is claimed that a person is imprisoned to await trial on an indictment in which he claims he is not charged with any act that can constitute a crime, he cannot obtain relief either by a writ of prohibition or of habeas corpus.

Although the majority of the court hold that the sufficiency of the indictments is not before them, they have, nevertheless, considered them and held them sufficient. As to that discussion, I am content to rest my dissent upon the views expressed by me in People ex rel. Childs v. Extraordinary Trial Term (*supra*).

I am, therefore, of opinion that the learned justice at Special Term was right and the order should be affirmed.

Order reversed, writ dismissed and relator remanded to custody. Order to be settled on notice.